## John Frey *vs.* Timothy Kirk.—*December*, 1832.

A citizen of *Maryland*, in 1816, gave his promissory note to a citizen of *Pennsylvania*, and made it payable at a banking house in the latter State. In 1818, the legislature of *Maryland*, by a special act, dispensing with some of the provisions of her general system of insolvency, authorised the maker of the note to obtain a discharge from his debts. HELD, that as this contract was to be performed in *Pennsylvania*, the insolvent laws of *Maryland* could not be pleaded in bar against it.

The insolvent laws of *Maryland* profess to operate upon all claims, whether the creditors are residents of other States or not, and no matter where the contracts are to be performed ; they are however, necessarily qualified by the constitution of the *United States*, and by the decisons of the Supreme Court of the *United States*, declaring the meaning and effect of that constitution.

Wherever this court can ascertain with certainty, the conclusions which the Supreme Court of the *United States* has reached in the exposition of the constitution of the *United States*, they will adopt them.

In conformity with this rule, the principles adopted by the Supreme Court, in the ultimate opinion of that court, pronounced in the case of *Ogden and Saunders*, 12 *Wheat.* 213, will be followed by the court.

The States possess the power to pass bankrupt laws ; but such laws, although constitutional in their action upon the rights of their own citizens, so far as they affect *posterior* contracts, are unconstitutional when they affect the rights of citizens of other States.

The constitutional rule is the same, whether the suit is brought in the *United States* Court, or in the court of the State where the debtor is sued, and by whose laws he is discharged.

The act of 1818, *ch.* 216, which repealed the exceptions or savings, in the act of of limitations, (act of 1715, *ch.* 23,) in favor of persons beyond seas, is not unconstitutional as applied to causes of action existing prior to the time of its enactment; but after its passage, persons beyond seas had the same time to bring their actions, as they would have had, if they resided here, and their rights had accrued on the day of the passage of the law.

Every acknowledgment to take a case out of the act of limitations, should be of such a character, as that an implied promise may arise therefrom.

In an action upon a note, the defendant having pleaded limitations, it appeared that a few days before the commencement of the suit, the defendant was shown the note, and asked if it was his, to which he replied, "yes," and being then asked what arrangement he could make for its payment, replied, as regards that he could not say; being then informed that suit was to be brought, he again replied, "you may save yourself the trouble, as I have taken the benefit of the insolvent laws." HELD, that the admission with the qualification urged by the defendant, could not be construed into the admission of a present subsisting debt; if the excuse was true, it was equivalent to a declaration that the debt was discharged; and that it could not be inquired into upon this issue, whether the discharge actually obtained, was valid or not.

APPEAL from *Baltimore* County Court.

*Assumpsit,* by the appellee against the appellant, commenced on the 22d of March, 1828, on a promissory note dated 20th August, 1816, for $213, of which the appellant was the drawer, payable to the appellee ninety days after the date thereof, at the Bank of *Chester* county, *Pennsylvania.*

The defendant pleaded, 1st. *Non assumpsit.* 2d. *Non assumpsit infra tres annos.* 3d. *Actio non*—and 4th. A discharge under the insolvent laws of *Maryland,* granted him in virtue of an act of Assembly, passed at December session, 1818, whereby the judges of *Cecil* County Court were authorised to grant him the benefit of the existing insolvent laws of the State of *Maryland,* without requiring the assent in writing of two-thirds of his creditors in amount.

Issues were joined upon the first *three* pleas, and to the 4th, the plaintiff replied, that the cause of action in the said

Frey *vs.* Kirk.

declaration mentioned, accrued to the plaintiff in the State of *Pennsylvania*, out of the jurisdiction of the State of *Maryland*, on the 20th of August, 1816, long before the passage of the act of Assembly referred to by the said defendant, and that at the time the said cause of action accrued to him the plaintiff, the plaintiff and defendant were residents and citizens of the State of *Pennsylvania.*

Issue was joined to this replication.

Errors in pleading on both sides were waived.

1. At the trial the plaintiff proved by a competent witness, that a few days previous to the institution of this suit, he called on the defendant, and showed him the note upon which the action is brought, and asked him if it was his note, to which the defendant, holding the note in his hands, replied "yes." The witness then told him the amount claimed, which he gave from a statement, which he (the witness,) held in his hand, and by which there appeared to be a balance due, including interest to the 6th February, 1828, of $232 19. The witness asked him what arrangements he could make for the payment. Defendant replied, as regards that, he could not say. He was then asked by the witness, if the amount was due. Defendant said yes, and the witness understood the answer to refer to the statement, which however the witness did not show him. The witness, after some short time, informed the defendant that he had been instructed to bring suit, to which the defendant replied; "you may save yourself the trouble, or expense," (the witness does not recollect which,) "as I have taken the benefit of the insolvent laws."

The following agreement was then read in evidence by the plaintiff.

It is agreed that the act of Assembly referred to in the pleadings, for the relief of defendant, shall be read from the statute book, and the certificate of the clerk of *Cecil* County Court, showing the discharge of defendant, shall be sufficient evidence for that purpose. And it was admitted, that at the date of the note declared upon, the plaintiff was a citizen

of the State of *Pennsylvania*, and the defendant a citizen of the State of *Maryland*. It was further admitted, that the promissory note in the declaration mentioned was executed by the defendant in the State of *Maryland*, on the day it bears date, and at that time, and when it became due, the defendant was a citizen of *Maryland*, and the plaintiff was a resident of, and citizen of *Pennsylvania*. That after the execution of the note, it was endorsed over by the plaintiff to a third person, who placed it for collection in the bank of *Chester* county, in the State of *Pennsylvania*, where it was made payable. That it was subsequently paid by the plaintiff according to the custom of that bank.

The plaintiff then prayed the court to instruct the jury, *First*, that if the jury believe the testimony, the plea of limitations is no defence to the action, the same being sufficient for the jury to find an acknowledgment of the plaintiff's claim within three years before the institution of this suit.

*Second*, it being admitted that the plaintiff was a resident and citizen of *Pennsylvania*, at the time the note, the foundation of the action, was paid by the plaintiff, and at the time the cause of action accrued, and that the cause of action accrued before the passage of the act of 1818, *ch.* 216, and it not appearing by evidence, that the plaintiff has ever been in the State of *Maryland* since the said cause of action accrued, that the plea of limitations is no defence to the action, but that the act of 1818, *ch.* 216, so far as the same affects this claim, is unconstitutional and void. That the act of 1818, *ch.* 107, passed for the benefit of the defendant, being passed after the cause of action accrued, is unconstitutional, null, and void, and that the discharge granted the defendant by the judges of *Cecil* County Court, so far as the same operates to discharge the future acquisitions of the defendant, that is to say, his acquisitions subsequent to the date of his application for the benefit of the insolvent laws, is illegal and void, and that the plaintiff, if the jury shall believe that the defendant is indebted to the plaintiff, is entitled to a judgment for the amount due, sub-

ject only to the defendant's personal discharge, and that property acquired, or to be acquired by him thereafter, continues to be liable in the same way, as before his application.

*Thirdly.* That the plaintiff being a citizen of *Pennsylvania,* and the defendant of *Maryland,* when the note was given and the cause of action accrued, and said note being payable at the bank of *Chester* county, in the State of *Pennsylvania,* and notwithstanding the same was given in *Maryland,* the discharge, granted by the judges of *Cecil* County Court, operates legally and constitutionally only to release the person of the defendant, and does not operate to discharge his future acquisitions.

*Fourthly.* That the said note being payable in the State of *Pennsylvania,* and when the same was given and became due, the plaintiff and defendant, being citizens of, and residing in different States, and the act of 1818, *ch.* 107, having been passed after the cause of action accrued, the defendant's discharge only operates to release his person, and not property subsequently acquired by him.

Upon the preceding prayers, the court (HANSON, A. J.,) decided, that the evidence offered on the part of the plaintiff, was sufficient evidence of an acknowledgment to take the case out of the act of limitations, and if the jury believed the testimony, they must find for the plaintiff upon the plea of limitations; and that, as to the act of 1818, *ch.* 216, it had been held, that non-resident plaintiffs were barred by that act from bringing suits, unless brought within three years after its passage, and granted the first prayer of the plaintiff.

The same judge further decided, that the defendant's discharge only operated to discharge his person, and that property acquired by him since, must be responsible for his debts, and granted the second, third, and fourth prayers of the plaintiff.

The defendant excepted, and the verdict and judgment being against him, he brought the present appeal.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Johnson,* for the appellant.

The suit not having been commenced within three years from the passage of the act of 1818, *ch.* 216, the remedy is gone, although it might not have been in the power of the legislature, to make the law applicable, immediately, to a contract between parties situated as these were, so as to bar it at once. Notwithstanding the law may not have been constitutional to the full extent contemplated by the legislature, still the court will enforce it, as far as its provisions are compatible with the constitution. *Eakin vs. Raub,* 12 *Serg. and Rawl.* 330. Limitations at all events, began to run from the date of the act of 1818. If this be not so, then contracts in existence prior to the original act of limitations are now in force, unaffected by that law. The acknowledgment relied upon to take the debt out of the act, was accompanied by a declaration, showing that it was not recognized as a present subsisting debt, and, consequently, the defendant was under no obligation to pay it. *Oliver vs. Gray,* 1 *Harr. and Gill,* 216.

When a party has been discharged under an insolvent law, nothing short of an *express promise* will revive the claim—a mere acknowledgment is not sufficient. The defendant may have been discharged under the act of 1805, and that law being in existence before, and at the time the contract was entered into, such a discharge would vacate it altogether. *Ogden vs. Saunders,* 12 *Wheat.* 213. Although the note on its face was payable in *Pennsylvania,* still in case of default, the *Maryland* courts were to enforce it.

*R. W. Gill,* for the appellee, contended,

That the plea of limitations was no defence under the circumstances of this case. It appears that a few days before the institution of this suit, the defendant admitted the note declared on to be his, and on being informed at the

same time, that suit was meditated, he replied to the witness, "you may save yourself the trouble, as I have taken the benefit of the insolvent laws." Now what is the effect of this admission? The defendant continually, from the time of making the note, to the trial of the suit, resided in *Maryland.* The note was payable to a resident of *Pennsylvania,* and made expressly payable at the *Chester* Bank, in that State. These admissions of a citizen of *Maryland,* are made with reference to his contract to be executed in *Pennsylvania,* and the inquiry is, do they sustain this defence? The effect of a defendant's admissions in reviving the remedy upon a contract, and waiving the bar arising from the act of limitations, was much considered in *Oliver vs. Gray,* 1 *Harr. and Gill,* 204, 217, and in *Keplinger vs. Griffith,* 2 *Gill and Johns.* 301. it was there held, that the acknowledgment of the debt with a refusal to pay, accompanied with an excuse for not paying, which, in itself, implies an admission that the debt remains due, and furnishes no real objection to the payment of it, is sufficient to take a case out of the statute. The excuse here is of that character. The note is admitted—actual payment is not pretended. The defendant's excuse is a discharge under the insolvent law; that is, an admission that the debt yet remains due in fact. Then, does the discharge furnish any real objection to the payment of the debt? Does it afford any moral or equitable ground for refusing to pay? In this case it does not. The only discharge which can be meant, is a discharge under the *Maryland* law. The defendant has always resided here. He could have no other. What is the effect of such a discharge upon this contract, which was to be executed in *Pennsylvania?* As it relates to that contract, and the rights of the present plaintiff dependent upon it, that discharge was clearly a nullity, void, and unconstitutional. When it is conceded, that the court will examine the legal effect of the excuse, as applied to the contract under consideration, and as that excuse furnishes evidence of a moral and equitable or legal ground for not paying, de-

cide either for or against the party relying upon the statute; when these principles are considered, and applied to the excuse in this case, then it appears, that here the act of limitations is waived, and the remedy revived. *De Sobry vs. De Laistre,* 2 *Harr. and Johns.* 220, 224. *Zachary and Turner vs. Boyle,* 6 *Peters,* 634. *Ogden vs. Saunders,* 12 *Wheat.* 213. *Shaw vs. Robbins, Ib. (no.)* 369. *Sturgess vs. Crowninshield,* 4 *Wheat.* 201. That the plaintiff here is entitled to consider the actual situation of the defendant, the case of *Keplinger and Griffith* fully shows. If we pass from the consideration of the defendant's language, and situation, and consider the actual discharge granted, then as it was under an act passed after the date of the note, and dispensed with material portions of the general insolvent law of Maryland, there can be no doubt of its invalidity to affect the plaintiff. In the matter of *Wendell,* 19 *Johns.* 153.

Again, under our general act of limitations, and as the law stood when this note was given and became due, limitations did not apply to the plaintiff at all. He was a nonresident, and protected by the savings of the act. But by the act of 1818, *ch.* 216, these savings were repealed. The repeal of the savings in the act of limitations in relation to non-residents was prospective, and does not apply to this an ántecedent cause of action; and if the language of the repealing law admits of a different construction, it then substantially becomes a law impairing the obligation of contracts, and is void. *Ogden vs. Saunders,* 12 *Wheat.* 261, 2, 3, 300, 301, 326, 327, 351, 352. *Ogden vs. Blackledge,* 2 *Cranch.* 272. *Eakin, et al. vs. Raub et al.,* 12 *Serg. and Rawl.* 330. *Elliott vs. Lyell,* 3 *Call* 241, 243. *Gillmore vs. Shorter,* 2 *Mod.* 310, 311. *Jones* 108, 2 *Showers* 17. 2 *Levinz* 227. *Ventris* 330.

*Johnson,* in reply.

The act of 1818, authorising the court to extend to the defendant the benefits of the insolvent laws, is not itself an insolvent law. It can with no more propriety be ca lled so

than could a law creating a new tribunal for the administration of the existing system. By the act of 1805, the County Courts alone had jurisdiction in cases of insolvency ; since then, jurisdiction in such cases, has been conferred upon the Orphans Courts, and special boards have been created, yet it has never been said that the discharges granted by each of these tribunals, have not been discharges under the act of 1805, and that they have not precisely the same effect as discharges by the County Courts. If the argument on the other side is sound, then every change in the mode of proceeding prescribed by the legislature, would be a new law, and would only operate on contracts thereafter to be made.

The act of 1818, repealing the savings in the act of limitations, was designed to operate on existing contracts to a certain extent. 12 *Serg. and Rawl.* 330, 344. It was the object of the legislature by that law to place the foreign creditor on an equality with the domestic; that is, to give them three years to sue in, and such a law is not unconstitutional, whatever might be said of a law, declaring subsisting contracts to be at once barred. *Sturgess and Crowninshield,* 4 *Wheat.* 201. These acts of limitations do not impair the obligation of contracts, they only concern the remedy. 12 *Wheat.* 352.

The proof offered by the plaintiff to take the case out of the act of limitations, is not sufficient for that purpose. It must be taken altogether, and part of it is, that the defendant had obtained a discharge from the debt, of which he intended to avail himself.

ARCHER, J., delivered the opinion of the court.

The following questions are presented by the various bills of exception in the record.

1st. Is the defendant's discharge under the insolvent laws of *Maryland,* a bar to the plaintiff's recovery of an absolute judgment?

2nd. Is the defendant protected by the statute of limitations? and if so, is the acknowledgment such as would be

sufficient to take the claim out of the operation of the statute?

In relation to the first question, the case presents the following facts. The contract was made between citizens of different States. The plaintiff resided in *Pennsylvania*, and the defendant in *Maryland*, and the contract which bears date in 1816, was payable in *Pennsylvania*, at the *Chester* County Bank. By the act of the general Assembly of *Maryland*, passed at December session, 1818, the benefit of the insolvent laws of *Maryland* was authorized to be extended to the defendant, without his obtaining the assent of two-thirds of his creditors.

We shall examine this question in two aspects. *First*, without any reference to the act of 1818, and looking solely at the ability of our laws to discharge the defendant from his contract, made subsequent to the passage of such laws; and *secondly*, as to the efficacy of the discharge in barring the recovery of the debt, contracted anterior to the passage of the special act of insolvency passed in the year 1818.

The insolvent laws of this State profess to operate upon all claims, whether, the creditors are residents of other States or not, and no matter where the contracts are to be performed; and if this cause were to be determined by our legislation solely, the plaintiff could not be entitled to any other than a *qualified* judgment.

The plaintiff, however, relies upon his rights as a citizen of another State, secured to him by the constitution of the *United States*, and contends, that however general may be the phraseology of our laws, they can have no operation upon his claim; and several decisions in the Supreme Court of the *United States* are relied upon to sustain this proposition. It has been a subject of great regret, that the determinations of the tribunal of the last resort upon this perplexing question, have been so unsatisfactory, and to use the language of one of the judges of the Supreme Court, that "they assume as much the shape of a compromise, as of a legal adjudication." But however we may lament this,

if it can be ascertained with certainty, the conclusions to which that court has arrived, as it is more especially its province to determine such questions, we shall feel ourselves constrained to yield to them the deference demanded by the peculiar sphere in which it moves, under the constitution and the laws.

Whatever doubt may heretofore have existed, with regard to the law settled in the cases of *Ogden and Saunders*, 12 *Wheat.* 213, and *Shaw and Robbins*, *Ib.* 369, arising from the diversified views taken by the judges in pronouncing their judgments, it appears by the late case of *Boyle vs. Zachary and Turner*, 6 *Peters S. C. R.* 634, that the ultimate opinion pronounced by *Mr. Justice Johnson*, is to be considered as final and conclusive of the law upon this subject, and Chief *Justice Marshall*, in 6 *Peters*, 348, declares, " that whatever principles are established in that opinion, are to be considered as no longer open for controversy, but the settled law of the court."

Looking then, to the *ultimate* opinion of *Mr. Justice Johnson*, as giving the law upon this subject, and not considering it, as in any manner, to be limited or restrained in its interpretation, by his general views expressed in his first opinion in the same case, we consider, that so far as the question before us is to be affected by that judgment, the following principles are clearly deducible. 1st. That the *States* possess power to pass bankrupt laws. 2. That such laws, although constitutional in their action upon the rights of their own citizens, are unconstitutional when they affect the rights of citizens of other States. The case then before the court, presented the question, whether the discharge of a debtor under a State insolvent law, would be valid against a creditor or citizen of another State. The inferior tribunal had determined the invalidity of a discharge under such circumstances, and in affirming the judgment, the learned judge declares, the purport of the judgment to be this, " that as between citizens of the same State, a discharge of a bankrupt by the laws of that State, is valid as

it affects *posterior* contracts; that as against creditors, citi-
zens of other States, it is invalid as to all contracts." And
in speaking of the important results growing out of the limi-
tation of the power of the States over contracts, to the con-
troversies of their own citizens, after they become the sub-
ject exclusively of judicial cognizance, he declares, "that
the States cannot proceed one step further without exer-
cising a power incompatible with the acknowledged power
of the other States, or of the *United States*, and with the
rights of the citizens of the other States." Acting in con-
formity with this opinion, and the views of it thus express-
ed, the Supreme Court decided the case of *Boyle vs. Za-
chary and Turner*, 6 *Peters*, 635, in which it was adjudged,
that a discharge under the insolvent laws of *Maryland*, was
inefficacious in relieving the debtor from a contract to be
performed in *Louisiana.* These determinations are decisive
against the operation of the discharge here pleaded against
the plaintiff's contract, as it was to be performed in *Penn-
sylvania*, unless as has been supposed, the opinion of the
Supreme Court gives countenance to the idea, that there is
a different constitutional rule operating in the *United States*
Courts, and in the courts of the State where the debtor is
sued, and by whose laws he is discharged.

Whatever may have been the views expressed by the
learned judge, whose last opinion has become the law of
the land, in his first opinion in *Ogden and Saunders*, we
consider them as impliedly abandoned, or at least as not
having been adopted by the court; for the views upon this
subject in his first opinion, are not only not reiterated, but
general conclusions are drawn, without the qualifications
to which the first opinion would have led, and the last
opinion is adopted by the court as the settled law. And if
it were otherwise, we should feel some difficulty in sanc-
tioning the doctrine, that a creditor, by pursuing his debtor
by suit in the courts of the State granting the discharge,
thereby stripped himself of any rights secured to him by
the constitution of the *United States*, or in any manner

waived them. Entertaining these views, we are compelled to decide, that the defendant's discharge did not protect him against an absolute judgment.

This determination renders it unnecessary to present any views, in relation to the operation of the special act of insolvency, passed for the defendant's release in the year 1818, subsequent to the date of the contract, and dispensing with the assent of creditors.

The next question submitted by the various prayers in the record is, whether the cause of action is barred by the statute of limitations?

The act of 1715, *ch.* 23, gave, by its third section, to persons beyond the seas at the time of the accrual of the cause of action, liberty to bring their actions within the respective times prescribed by the second section, after their coming within the State. The act of 1818, *ch.* 216, repealed the exceptions or savings in this statute in favor of persons beyond seas.

If this repealing statute is unconstitutional, the plaintiff's claim, standing under the exception in the law of 1715, would not be barred by limitations, as there is no evidence in the record, that the plaintiff had been at any time within the State, from the formation of the contract, or at its accrual.

This cannot now be considered as an open question in this court. The constitutionality of the repealing law, was determined at the last June term, in the case of the *State use of Krenkel vs. Hoppe and Hammer*, in which the court adjudged, that after the repealing law, all persons beyond seas had the same time to bring their actions, as they would have had, if they had resided here, and the causes of action had accrued on the day of the passage of the law—and they gave such an interpretation to the act, as placed all suitors, foreign and domestic, upon the same footing. The unlimited latitude granted to persons beyond seas, was considered by

the legislature as unreasonable, and it could constitute no actual grievance, or just cause of complaint, if they were reduced to the same standard as our own citizens. Placing such a construction upon the act of 1818, it was clearly, neither a violation of any constitutional obligations of the State, for no obligation of contract was at all violated or impaired; nor was it an infringement of any principle of natural justice, as affecting the foreign creditor, for the same law governed his contract, which operated on all other contracts.

More than three years having elapsed after the passage of the law of 1818, *ch.* 216, before the institution of the suit, the statutory bar of limitations defeated the plaintiff's recovery, unless the evidence adduced by him shall be deemed sufficient to remove the bar and of this, we shall now inquire.

The evidence on this branch of the case is detailed in the bill of exceptions. It is unnecessary to advert to it here with particularity. In substance it is an admission that the cause of action was unpaid, and a refusal to pay, because the defendant was discharged by the insolvent laws.

Every acknowledgment to take a case out of the statute, should be of such a character, as that an implied promise may arise therefrom. It should therefore, in the language of *Oliver and Gray*, be the admission of a present subsisting debt. And although it was admitted in effect, that the debt was unpaid, the defendant relies upon his discharge under the insolvent law, to prevent its coercive payment. Taking the admission with the qualification which he has urged, it could not be construed into the admission of a present subsisting debt, for, if the excuse were true, instead of its being the admission of a present subsisting debt, it would be equivalent to a declaration that the debt was discharged. It is true, the admission is accompanied with an excuse, that leaves the moral obligation to pay in full force, yet taken altogether, it wants the essential ingredient demanded in *Oli-*

*ver and Gray;* it is not the admission of a subsisting debt, but a denial of its existence as such.

Nor can it be answered, that the discharge was unconstitutional and void, and be inferred from this, that the admission was therefore of a subsisting debt; for the acknowledgment must be taken altogether, and no evidence can be received, to turn what is a denial of an existing liability, into the acknowledgement of a debt, by showing, that he either was not discharged by the insolvent laws, or that his discharge was inefficacious.

From the preceding views, it follows, that the court below were right in granting the *third* and *fourth* prayers in the first bill of exceptions, but were in error in granting the *first* prayer in said bill of exceptions; and were also in error in granting the *second* prayer therein contained, because, although the discharge of *Frey* under the insolvent laws, was inoperative as regards the plaintiff's claim, yet the court went too far in their instruction to the jury, if they believed the defendant was indebted to the plaintiff, that therefore the plaintiff was entitled to recover.

The court below were in error in the opinion by them expressed, and in the direction by them given in the *second* bill of exceptions. It also follows, that the court were right in rejecting the prayer made by the defendant's counsel in the *fourth* bill of exceptions, and in the opinion expressed by them therein.

**JUDGMENT REVERSED.**