# MARYLAND REPORTS.

CLEVELAND P. MANNING, PERMANENT TRUSTEE IN
INSOLVENCY OF CHARLES J. CARRUTHERS vs.
EMMA W. CARRUTHERS ET AL.

*Fraudulent Conveyances—Husband and Wife—Limitations—Feme
Sole Trader—Trustee in Insolvency—Jurisdiction of Equity—
Statutory Construction.*

A husband who was at the time insolvent transferred his business to
his wife, without consideration, and thereafter pretended to carry it
on as her agent, without any compensation. Various pieces of
property were subsequently conveyed directly to the wife by the
parties from whom they were purchased, and were paid for from the
profits of the business. The husband applied for the benefit of the
insolvent law and his trustee in insolvency filed a bill in equity to
subject the property so conveyed to the wife to the payment of the
husband's creditors. *Held*, that the alleged transfer of the busi-
ness, together with the various conveyances of property, constituted
a scheme to defraud the creditors of the husband, and that the
trustee in insolvency was entitled to the relief asked for.

Some of the conveyances by which property was conveyed to the in-
solvent's wife were executed more than three years before the bill
in this case was filed and before the passage of the Act of 1892,
chap. 267, which provides that conveyances from a husband to a
wife shall not be valid if in prejudice of the rights of his subsisting
creditors, who, however, must assert their claims within three years
after the acquisition of the property by the wife. *Held*, that this
statute was not retroactive, and could not operate to destroy the
right to vacate the fraudulent conveyances then vested in the hus-
band's creditors, and that the limitation of three years began to run
only from the date of the Act as to prior conveyances.

*Held*, upon the facts of the case, that the above-mentioned conveyances
to the wife were not made to her as a *feme sole* trader engaged in a
*bona fide* business, and were not within the purview of Code, Art.
45, sec. 7, which authorizes married women to engage in business.

A trustee in insolvency may maintain a bill in equity to vacate con-
veyances by the insolvent in fraud of his creditors.

Appeal from a decree of the Circuit Court of Baltimore City, (WRIGHT, J.) dismissing the bill of complaint in this cause filed by the appellant, as permanent trustee in insolvency of Charles J. Carruthers. The bill set forth that the appellant believed, upon such information as he could obtain, that twelve different conveyances found on the Land Records of Baltimore City, eleven of which were to the appellee, Emma W. Carruthers, alone, and the twelfth to herself and her husband jointly, were all, in fact, fraudulent as against the creditors of the insolvent, and constituted an attempt on his part to conceal his property from his creditors by placing it in his wife's name. The bill also charged that five mortgages placed upon certain of the lots of ground described in these conveyances by the appellees, Mr. and Mrs. Carruthers, to a building association therein mentioned, had been taken by the latter with knowledge that the mortgage was really that of the insolvent, and asked a discovery of the amount actually due thereon to the building association. The respondents answered separately, denying all fraud, and averring that the twelve pieces of property enumerated in the bill, had all been purchased out of the profits of a business carried on by Emma W. Carruthers with her own separate means, and as a "*feme sole* trader, he" (the husband) " superintending said work for her as her agent."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Charles J. Bonaparte* (with whom was *Paul M. Burnett* on the brief), for the appellants.

It is submitted upon the evidence contained in the record: 1. That Mrs. Carruthers was never engaged in a *bona fide* business as a *feme sole* trader. Code, Art. 56, sec. 36; *Neale* v. *Hermanns*, 65 Md. 474; *Poffenberger* v. *Poffenberger*, 72 Md. 321; *Flynn* v. *Walsh*, 72 Md. 324. 2. That all of the " skill, industry and personal labor " by which the property in controversy in this case was ac-

quired has been supplied directly, and that all the capital employed in the business has been supplied *either directly or indirectly* by the insolvent debtor. *Neale* v. *Hermanns,* 65 Md. 475. 3. That the various conveyances taken in the name of Mrs. Carruthers constituted in the view of a Court of Equity, under the circumstances in this case, gifts from a husband to his wife during coverture. *Diggs* v. *McCullough,* 69 Md. 593. 4. That she became at the time of each conveyance, trustee of the property conveyed for the benefit of the then existing creditors, even if the conveyances were made in good faith and under the supposition that none of these would suffer loss. 5. That, if the conveyances were made with a fraudulent purpose to deprive its creditors, whether past, present or future, of the just satisfaction of their debts, she holds as trustee for the benefit of all his creditors, whatever the dates of their claims. *Diggs* v. *McCollough,* 69 Md. 610; *Moore* v. *Blondheim,* 19 Md. 175; *May on Fraud. Convey.,* 521 and chap. 3, p. 61; *Perry on Trusts* sec. 149. 6. That the insolvent trustee, representing all the creditors, stands in the place of each one among them, and is entitled to receive from her the property thus fraudulently conveyed. *Diggs* v. *McCullough,* 69 Md. 609. 7. That, even if we concede that either the $700 or the $350, or both, constituted, in fact, contributions of capital by Mrs. Carruthers, the burden of proof would be on her to show that these had been contributed under an express promise of repayment by her husband, and she has not sustained, and, indeed, has not attempted to sustain, the burden. *Jenkins* v. *Middleton,* 68 Md. 540; *Grover* v. *Radcliffe,* 63 Md. 500; *Farmers' & Merchants' Natl. Bank* v. *Jenkins,* 65 Md. 248; *Levi* v. *Rothchilds,* 69 Md. 352. 8. That even were it shown that this business had been, since September, 1889, conducted with capital furnished by Mrs. Carruthers, and by her husband as her manager or agent, she would be entitled, as agains this creditors, only to such proportionate part of the profits as the use of the $350, which she claims to have contri-

buted, would bear to his personal labor and attention, and this amount will be so small, as to scarcely merit consideration. *Glidden* v. *Taylor*, 16 Ohio St. 509; *Penn.* v. *Whitehead*, 17 Grattan, 503. 9. Finally, that the whole record discloses a deliberate and preconcerted scheme whereby the insolvent might do business without responsibility to his creditors, and when once discharged no doubt receive back from his wife the property which she had kept out of their grasp. A Court of Equity is always vigilant to defeat such an attempt. *Seitz* v. *Mitchell*, 94 U. S. 582–3; *Backer* v. *Meyer*, 43 Fed. Rep. 703; *Hinkle* v. *Wilson*, 53 Md. 292; *Grant* v. *Sutton*, 19 S. E. Rep. 784; *Yates* v. *Law*, 9 S. E. Rep. 509.

*Henry T. Tapman* for the appellees.

The creditors of the husband must attack the conveyance of property to the wife within three years after the acquisition of the property, or be absolutely barred. The evidence discloses that eight of the conveyances was made to her more than three years prior to the commencing of this action, and the balance was acquired whilst she was a *feme sole* trader. Act 1892, ch. 267. The words of the Act are first to be resorted to, and if these are plain in their import, they ought to be followed. *Wilson* v. *State*, 21 Md. 1. It is the duty of Court to interpret a statute according to the intention of the framers of the law. The preamble is the key to open the minds of the makers of the Act. *Clark* v. *Mayor and C. C. of Baltimore*, 29 Md. 277. Presumption must always be in favor of the validity of laws, if the contrary is not clearly demonstrated. *Anderson* v. *Baker*, 23 Md. 531. The Court of Common Pleas of Baltimore City is clothed with full and ample power to hear and determine all matters arising out of, or appertaining to insolvency proceedings, even to the setting aside of fraudulent conveyances made by the husband to the wife, either directly or indirectly. Constitution, Art. 4, sec. 28; *Cross* v. *Hecker*, 75 Md. 574; *Thomas* v. *Brown*, 67 Md.

517. A married woman has the right to conduct or engage in any business in this State, and to invest and reinvest the profits of said business to her sole and separate use, and it is not liable for the husband's debts. Code, Art. 45, sec. 7.

FOWLER, J., delivered the opinion of the Court.

The appellee, Charles J. Carruthers, was engaged in the plumbing business in the city of Baltimore. On the 11th of October, 1886, he was married to the appellee, Emma W. Carruthers, and three years thereafter, being embarrassed and having lost his capital, and being unable to pay his creditors, he transferred his business to his wife, and thereafter conducted it for her as her manager and agent. From the time of the marriage until 1894, when the bill in this case was filed, the business was continued, the wife from time to time acquiring, not directly from her husband, but from third parties, a number of pieces of leasehold property, amounting in value to about $15,000. In the meantime there was no visible sign of any change in the management or ownership of the business having taken place, although the appellees claim that the wife became the owner of it in September, 1889. The husband continued in most respects to be the ostensible, as we believe he was the real owner of the business which he pretended he was carrying on for his wife. His name, until shortly before these proceedings began, appeared in the directory as the person who was the owner of and transacting the business, and the name of the wife never did so appear. He drew checks in his own name, and handled the money earned in the business as though it were his own. He never received any salary—his compensation being his board and clothes and some "money to treat."

This statement of facts alone is sufficient to arouse the suspicions of the most credulous, and we think there is ample proof to be found in the record before us to demonstrate that the alleged transfer of business, together with

the various conveyances, of property, constituted a scheme which was resorted to for the purpose of avoiding the payment of creditors, whether subsisting or not. In the case of *Diggs* v. *McCullough*, 69 Md. 592, it is said: " These successive conveyances and pretended sales to which we have alluded, were but devices *. * * to place his property beyond the reach of his creditors, subsisting and subsequent, whilst he continued in the full use and enjoyment of it himself. This is the direct result of his conduct, and, of course, must have been so intended by him. The very methods to which he resorted, and the agencies which he employed proclaim his fraudulent purpose."

It is often said that fraud is constantly assuming new forms and that for this reason it is difficult to detect; but in this case we find that an old and well-known device has been adopted. One of the witnesses called to testify for the appellees said that he had some business transactions with Mrs. Carruthers in 1889, and on cross-examination he explained that the reason he supposed he was dealing with the wife rather than the husband was because he knew there was a judgment against the latter, and the witness did not think Carruthers would carry on business in his own name with a judgment hanging over him. So common, indeed, has the device adopted in this case become, that he who avails himself of it must, when his creditors attack him, be prepared to show that his conduct is fair and honest. In the case of *Seitz* v. *Mitchell*, 94 U. S. 583, JUSTICE STRONG delivering the opinion of the Court, said: " Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors, and preserving it for his own use, and they hold forth such temptations for fraud that they require close scrutiny. In a contest between the creditors of the husband and wife there is, and there should be, a presumption against her which she must overcome by affirmative proof

* * * *. To hold that conveyances thus taken and thus paid for are sufficient to protect the property against creditors of an insolvent debtor would be making fraud both profitable and easy."

The attempt made by the appellees to vindicate their conduct cannot succeed. It is conceded that at the time the husband pretended to retire from the management of the business he was insolvent. There is no satisfactory evidence in the record to show that the money with which the property was purchased came or could have come from any other source than the profits or earnings of the husband's business. And having thus, from time to time, stripped himself of all his property by having it, as he purchased it, conveyed to his wife, he made application for the benefit of the insolvent law, and was duly declared an insolvent without any assets whatever. Under these circumstances we think it our duty to aid the appellant, who, as trustee in insolvency is the representative of all the husband's creditors, in his effort to reach the property standing in the wife's name and purchased with the husband's money, so as to subject the same to the payment of the husband's creditors.

In order to avoid the consequences of the conclusion we have reached, it is contended in the first place that by virtue of the Act of 1892, ch. 267, these proceedings to set aside the conveyances to the wife are barred. But such a position is not tenable. The statute in question provides that " no acquisition of property passing from the husband to the wife after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors, who, however, must assert their claims *within three years after the acquisition of the property by the wife or be absolutely barred.*" Art. 45, sec. 1, Code P. G. L. It is clear that the construction placed upon this provision of the Code by the appellees would entirely destroy the right of action which was vested in the subsisting creditors at the time it was adopted, and for this reason, if

for no other, the suggested construction cannot be adopted
by us, unless required by express terms.    But we find no
such constraining language in the statute.    On the con-
trary, we think it clear that the Legislature intended the
enactment to be construed as prospective and not as retro-
active—especially as to give it the latter effect would ren-
der it unconstitutional, as being an attempt to destroy
vested rights of action.    *Isaac v. Jones,* 21 Md. 433 ; *Wil-
liar v. Balto. Butchers' Loan and Annuity Asso., &c.,* 45
Md. 548 ; *Garrison v. Hill,* 81 Md. 551.    In the case last
cited it was held that the Act of 1894, ch. 405, which pro-
vides that no will shall be subject to caveat or other objec-
tion to its validity after the expiration of three years from
its probate, must be construed as prospective, because the
Legislature could not rightfully give to it a retroactive
effect, and that therefore under that Act proceedings against
wills probated before the Act was passed must be com-
menced within three years from the date of the passage of
the Act.    And we think the same rule of construction
should be applied to the provision of the Code we are
now considering.    Although the terms are general, show-
ing that all acquisitions of property passing to the wife from
the husband after coverture, if in prejudice of the rights of
subsisting creditors were included, yet inasmuch as the
Legislature had no power to destroy the right of action of
the creditors, which was vested in them when the Act
of 1892 was passed, to institute proceedings to set aside
the conveyances to the wife which were made before the
passage of that Act, " we think," as was was said in *Gar-
rison v. Hill, supra,* " that the limitation fixed by the stat-
ute should commence to run when the proceedings to af-
fect the validity of a will is first subjected to the operation
of the statute, which in this case is the date of the passage
of the Act."    It is apparent, therefore, that under this
construction of sec. 1, Art. 45, of the Code, these proceed-
ings are not barred, for they were commenced within three
years from its adoption.

But, secondly, it was urged on the part of the appellees, that under the law of this State (Code, Art. 45, sec. 7), a married woman has a right to engage in business as a *feme sole* trader, and to invest and re-invest the profits of said business to her sole and separate use—free from the debts of her husband. But if we are correct in the conclusion we have drawn from the testimony, the wife in this case was not engaged in a *bona fide* business as a *feme sole* trader, so as to be protected under the provision of the Code referred to. *Neale* v. *Hermans*, 65 Md. 475 ; *Poffenberger* v. *Poffenberger*, 72 Md. 321.

And, finally, the appellees have taken refuge under a plea to the jurisdiction, contending that the Insolvent Court, and not a Court of Equity, is the proper tribunal to entertain an application to set aside fraudulent conveyances like those here attacked, and to sustain this view the cases of *Thomas* v. *Brown*, 67 Md. 517, and *Cross* v. *Hecker*, 75 Md. 574, were cited. It was held in both of these cases that the Insolvent Court, and not a Court of Equity, is the proper tribunal to *distribute* the estate of the insolvent— subject to all liens. We find nothing in them in conflict with the general rule, everywhere acknowledged, that a Court of Equity has jurisdiction to set aside fraudulent conveyances. In *Diggs* v. *McCullough*, *supra*, it is said that the trustee in insolvency, representing all the creditors, "may undoubtedly sustain any proceeding which the creditors might prosecute, to vacate fraudulent conveyances made by the insolvent." This general rule, will, of course, apply equally as well to the case we have here, where the deeds were made by third parties to the wife, and the purchase money was paid by the insolvent husband in fraud of his creditors.

It follows from what we have said that the appellant was entitled to the relief prayed, and the decree dismissing his bill must be reversed. We should say that the deed made by the appellee, Charles J. Carruthers, to Emma W. Carruthers, before their marriage, is not attacked, all intention

of so doing having been disclaimed at bar; nor are we now concerned with the transactions of the appellees with the Frederick Avenue Building Association which are mentioned in the bill.

*Decree reversed and cause remanded.*

(Decided March 24th, 1896).