BRANTLEY IRELAND *v.* WILLIAM E. SHIPLEY
ET AL.

[No. 34, April Term, 1933.]

92

*Decided May 26th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Daniel B. Leonard,* with whom were *Bowie & Burke* on the brief, for the appellant.

*George E. Kieffner* and *Thomas M. Jacobs,* with whom were *Stewart, Pearre & Kieffner* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

On July 31st, 1924, Brantley Ireland, while employed by William E. Shipley, at his place of business at the Falls Road and Belvedere Avenue in the City of Baltimore, was engaged in breaking a plastering lath. In the course of his work a piece of the lath struck him in the left eye and caused an intra-ocular hemorrhage, which resulted in a temporary total disability. On August 6th, 1924, the employer reported the accident to the State Industrial Accident Commission, and on August 18th, 1924, the employee filed a claim, stated in the record to be in the following form:

"This claim is in the usual form with affidavit. Brantley Ireland states that he is 23 years old, unmar-

ried. That he claims compensation for an injury due to an accident on July 31, 1924, in the course of his employment by William E. Shipley as an electrician. He has worked at his occupation 5½ years; for his present employer about ten months.

"He is now totally disabled and has been since July 31, 1924. The injury is to his left eye.

"Is the injury temporary or permanent? Temporary.

"Describe how the accident occurred. Cutting wooden lath and it flew up and hit eye.

"His average weekly wage has been $37.50 which has been reduced 100% by this injury. His employer has provided medical attention. Dr. Nichols and Dr. H. C. Davis have attended him."

At the same time a report of Dr. H. C. Davis, his attending physician, was filed, in which Dr. Davis stated that the injury had not resulted in a permanent disability, but that its probable duration was not known at that time.

The employer and insurer were notified of the claim and informed "that if no request for a hearing has been received or adjournment granted by the Commission, order will be passed on the 26th day of August, 1924, upon the evidence then in the hands of the Commission." Apparently no hearing was requested, and on August 27th, 1924, the commission ordered that "compensation at the rate of $18.00 per week, payable weekly, be paid to the said Brantley Ireland by William E. Shipley, employer, and New Amsterdam Casualty Company, insurer, during the continuance of his disability subject to the provisions of the Workmen's Compensation Law, compensation to begin as of the 4th day of August, 1924, and that final settlement receipt be filed with the Commission in due time."

On January 24th, 1925, a "final settlement receipt" was executed by Ireland in this form:

"Case of Brantley Ireland Final Settlement Receipt

"Received of William E. Shipley the sum of Nine 00/100 Dollars making in all with weekly pay-

ments already received by me, the total sum of Sixty three 00/100 Dollars in settlement of all amounts due for compensation on account of an award made by the State Industrial Accident Commission in settlement of claim No. 75376 (as per claim docket of said Commission) for injuries suffered by me on or about the 31st day of July, 1924, while in the employ of William E. Shipley * * *

"The compensation paid as above recited is computed as follows:

| | |
|---|---|
| Injury occurred 7-31-24 | Rate of compensa- |
| Compensation began 8-4-24 | tion as per award under claim No. |
| Disability ended 8-28-24 | 75376:              $18.00 |
| Period of disability 3 weeks and 3 days | Total paid claimant  63.00 In addition to |
| Average weekly wage $37.50. | amounts paid claimant:" |

and was filed with the commission.

On May 26th, 1932, over seven years later, Joseph Leiter, counsel for Ireland, addressed to the commission a letter in which he requested it to "set down for hearing the case of *Brantley Ireland v. William E. Shipley,* to determine the following issue: 'To determine the nature and extent of permanent disability of the above claimant.' " No action was taken in connection with that request until August 9th, 1932, when Ireland filed a more formal petition in which he alleged that when he was discharged on August 28th, 1924, the employer, the employer's physician, and the insurer had knowledge of an existing permanent disability to claimant's left eye; that the commission had not passed upon the question as to whether the disability was permanent, but that it could be shown by competent medical testimony that it was in fact permanent; and that no prejudice had resulted from the delay in filing the petition. Upon that petition he asked that the case be reopened to allow him to offer testimony as to the "permanent disability to his left eye."

Upon that petition, after notice, a hearing was had to

determine these issues: "1. (By Claimant): Petition to reopen to determine the nature and extent of disability. 1. (By Insurer): Is the claim barred by section 54, in Acts of 1931, chapter 342. 2. Is the claim barred by the statutory limitations of three years. 3. Did the claimant file his petition to reopen within a reasonable time, after knowledge of the condition complained of. 4. Have the rights of the employer and insurance carrier been prejudiced by the claimant's failure to file his petition to reopen, within a reasonable time, after the knowledge of the condition complained of."

At that hearing Dr. Davis testified that he had examined Ireland at the time he was injured, and that " 'the internal of the eye and part of the front part of the eyeball was filled with fresh blood and the vision in the eye was reduced to perception of light,' that he saw him on nine different occasions subsequently, the last time being September 4th, 1924. 'At the end of that time the hemorrhages had cleared up and the vision had improved 20/200's or one-tenth of normal vision. There was, however, a partial cataract formed in the eye at that time. Now I didn't see him any more until a couple of days ago, when the condition of his eye was exactly the same as when I last saw him. That is a period of eight years.' Q. This cataract you speak of, is that a traumatic cataract? A. I don't see what else you could call it."

Ireland also testified to the impairment of the vision of his left eye, and further testified when asked "Why didn't you file your claim in September, 1924?" "I left the state and was out of it three years, and when I came back in 1927 I didn't know I had any money due for this eye injury. When I left the state I thought it would get better and when I came back in 1927 and I started to see professional men about it they advised me to come down and see about it, and I put it off and I finally didn't come down."

Upon that record the commission found for the claimant on the "first and second issues" and awarded him compensation for a permanent partial disability, at the rate of eighteen dollars a week for the period of ninety weeks to begin at the

end of the total temporary disability determined by its order of August 27th, 1924. Subsequently that order was modified so as to require the payment of the compensation awarded to begin on August 9th, 1932. From that order the employer and the insurer appealed to the Baltimore City Court, which, after a hearing upon the motion of the insurer and employer, reversed the order of the commission and entered a judgment for costs in their favor. The appeal is from that judgment.

The questions which it presents are whether, under chapter 342 of the Acts of 1931, the claim was barred (a) because it was not filed within one year next following the order of August 27th, 1924, (b) because it was not filed within one year next following the passage of said act, to wit, April 17th, 1931, and (c) because it was not filed within one year from the time said act became effective, to wit, June 1st, 1931.

Stated in another way, the inquiry is whether the Act of 1931 applies to claims which, while in existence when it was passed, had not then been filed, and if it does, whether the period of one year should be reckoned from the date of the "final award" or from the date of the passage of the act or from the date on which it became effective. The two questions last stated, however, only become material if the letter of May 26th, 1932, is accepted as a sufficient request to reopen the case, for the formal petition was filed more than one year after the act became effective. Section 54 of the Workmen's Compensation Act, prior to the passage of chapter 342 of the Acts of 1931, provided that: "The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or change with respect to former findings or orders with respect thereto as in its opinion may be justified." Code, art. 101, sec. 54. Under the law as it then stood there was no stated limitation upon the time within which the commission might reopen a case for the purpose of modifying an award, but chapter 342 of the Acts of 1931 repealed and re-enacted section 54, amending it by adding these words "provided, however, that no modification or change of any

final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within one year next following the final award of compensation."

The effect of that act was to change the existing law by imposing, upon the right of one affected by an award to have it conform to changed conditions, the limitation that such right could only be asserted within one year next following "the final award of compensation." The contention of the appellees is that that act (1) annihilated such rights in all cases in which there had been a final award more than one year before the passage of the act, or more than one year before it became effective, but, (2) even if it did not have that effect, it nevertheless affected such rights to the extent that they could not validly be asserted more than one year next following the effective date of the act. And in that connection they further contend that the letter of May 26th, 1932, was not a valid or sufficient "application" for a change or modification of the award of August 27th, 1924, and that that was a final award.

The appellant on the other hand contends that section 54, article 101 of the Code, as it stood prior to the Act of 1931, imposed no time limitation upon the right of the claimant to have his case reopened and additional compensation awarded, and that chapter 342 of the Acts of 1931 imposed no such limitation, because, he contends, its operation is prospective and not retrospective, but that, if it is retrospective in its operation, nevertheless it does not affect his case, because no "final award" within the meaning of the act of 1931 was ever passed therein. He further contends that, if the act affects his claim at all, the limitation period should be computed from the day on which it became effective, and that if so computed his letter of May 26th, 1932, was a sufficient application, filed within one year next following the effective date of the statute.

It may be stated, as a general principle of statutory construction, that in the absence of a clear manifestation of a

contrary intent, or unless such a construction would be inconsistent with the purpose and nature of the legislation, that the operation of a statute which adversely effects substantial rights will be assumed to be prospective rather than retrospective. *Williar v. Balto. Butchers' Loan Assn.*, 45 Md. 546; *Chilton v. Brooks*, 71 Md. 445, 18 A. 868; *Gable v. Scott*, 56 Md. 176; *Johnson v. Johnson*, 52 Md. 668; *Williams v. Johnson*, 30 Md. 500; *Grinder & Baugher v. Nelson*, 9 Gill, 299; *Savings Bank v. Weeks*, 110 Md. 90, 72 A. 475; *Hemsley v. Hollingsworth*, 119 Md. 441, 87 A. 506; *Fidelity Sav. Bank v. Vandiver*, 125 Md. 355, 93 A. 978; *Vandiver v. Fidelity Sav. Bank*, 120 Md. 623, 87 A. 1086; *Ellicott City v. Howard County*, 127 Md. 581, 96 A. 798; *Jeavons v. Pittman*, 126 Md. 653, 95 A. 1070; *State v. Safe Dep. & Tr. Co.*, 132 Md. 251, 103 A. 435; *Bartlett v. Ligon*, 135 Md. 626, 109 A. 473. It is also settled law in this state that, where a statute is repealed and re-enacted with amendments, and the amended statute contains substantially the same provisions as the original, the continuity of the original as to those provisions is not affected. *Watts v. Port Deposit*, 46 Md. 500; *Dashiell v. Baltimore*, 45 Md. 615. But where the effect of the statute is not to obliterate existing substantial rights, but affects only the procedure and remedies for the enforcement of those rights, *"prima facie* it applies to all actions—those which have accrued or are pending, and future actions." *Sutherland on Statutory Construction*, sec. 674. Since the state itself has not the power to destroy vested rights without compensation, except in some legitimate exercise of its police power, statutes are not to be construed as operating retrospectively where such a construction would have that effect, unless such a construction is unavoidable. *Sutherland on Statutory Construction*, sec. 641. But the same reason does not apply to statutes affecting procedure or remedies, which do not destroy or impair a substantial right, because ordinarily there is no vested right "in any particular mode of procedure for the enforcement or defense of" the right. *Id.* 674. And ordinarily legislation affecting procedure only is construed as operating on all proceedings

instituted after its passage, whether the right accrued before or after that event. 27 *Halsbury's Laws of England,* 161; *Duggan v. Ogden,* 278 Mass. 432, 180 N. E. 301; 82 *A. L. R.* 765; 25 *R. C. L. "Statutes,"* sec. 38; 59 *C. J. "Statutes,"* sec. 700. But while statutes of limitation are incidental to procedure, unless a contrary intent is clearly manifested, the general rule is that such statutes will not be construed as operating retroactively, so as to bar the enforcement of rights existing at the time they were passed, but prospectively, so that the period prescribed will as to such rights begin to run at the time when the statute takes effect. *Thomas v. Higgs,* 68 W. Va. 152, 69 S. E. 654; *Manning v. Carruthers,* 83 Md. 8, 34 A. 254; 37 *C. J. "Limitations of Actions,"* sec. 10; *Garrison v. Hill,* 81 Md. 551, 32 A. 191; *Baumeister v. Silver,* 98 Md. 418, 56 A. 825; *Frey v. Kirk,* 4 G. & J. 509; *Sohn v. Waterson,* 17 Wall. 596, 21 L. Ed. 737.

In construing chapter 342 of the Acts of 1931, in respect to the question whether it operates retrospectively, consideration must also be given to sections 40 and 43, art. 101 of the Code, because those three sections are all necessary to give to the commission the power, which the Legislature apparently intended it should have, to adjust the compensation awarded to changed conditions which could not reasonably have been anticipated when the award was made. If no such power existed, then the award, instead of being an award of compensation commensurate with an actual disability, would rather have the aspect and incidents of a money judgment which might in time have no relation at all to any disability. As where compensation was awarded on the theory that the claimant was totally permanently disabled and later, as the result of an operation or other causes, the disabling injury was cured or corrected so that disability no longer existed. In *Bethlehem Corp. v. Simmons,* 143 Md. 509, 122 A. 678, sections 43 and 53 [now Code 1924, art. 101, secs. 43, 54] were considered together as *in pari materia.* Section 40 authorizes the commission to investigate claims, imposes upon it the duty upon the application of either party

of ordering a hearing, and empowers it to refer claims to an arbitration committee appointed by it. It is the source of the most important power which the commission has, that of considering and determining claims for compensation made under the act. That section concludes as follows: "If changes of circumstances warrant an increase or rearrangement of compensation, like application shall be made. No increase or rearrangement shall be operative for any period prior to application therefor."

Section 43 authorizes the commission to deal with "further injuries," the rights of the widow of a deceased employee upon remarriage, and the rights of a widower or widow to compensation where the marriage took place after the person entitled to benefits was injured. It concludes with this language: "If aggravation, diminution or termination or disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case, the commission may, upon the application of any party in interest or upon its own motion, readjust for future application the rate of compensation in accordance with rules in this section provided, or in a proper case, terminate the payments." In no one of those three sections is there any limitation upon the time within which an application for a modification of the award may be made, or within which the commission may act thereon. But in *Bethlehem Corp. v. Simmons, supra,* the court treated section 54 (then section 53) as defining the jurisdiction of the commission in respect to the time within which it might exercise the powers conferred by section 43, and by a parity of reasoning it would apply with equal force to section 40. Unless section 54 is so applied, its purpose is not apparent, for the power and jurisdiction of the commission in respect to claims and awards rests primarily upon sections 40 and 43.

Prior to the Act of 1931 it was the apparent policy of the State that the jurisdiction of the commission to change or terminate compensation to conform to changed conditions was continuing and not limited as to the time within which it might be exercised. That act effected a change in that

policy by limiting the time within which the continuing jurisdiction might be exercised to one year next following any final award. That change extended to awards under the authority of sections 40 and 43, because section 54 itself provided for no original awards, and such awards could only be made under section 40 or section 43.

So that, when we come to consider whether chapter 342 of the Acts of 1931 was intended to operate retrospectively, weight must be given the fact that it affects every order of the commission under sections 40 and 43 denying or awarding compensation.

In *Bethlehem Corp. v. Simmons,* 143 Md. 509, 122 A. 678, the court recognized that under proper conditions the privilege of having a claim reheard, in order that compensation might be adjusted to cover disability resulting from the injury, the duration or extent of which was not known or anticipated at the time of the original award, was a valuable right. And in the absence of any authority, there would seem to be no escape from that rather obvious conclusion, since for the right to receive fair and just compensation under the act the employee was required by its terms to surrender valuable common law rights, and it never was the intent of the act to leave him without remedy, either at common law or under the act, to secure in a proper case just and reasonable compensation for an injury arising out of and in the course of his employment.

But while the Legislature had not the power to deprive the employee of such rights, it had undoubtedly the power to regulate the time and mode for the assertion of them. *Supra.*

Literally the Act of 1931 does apply to all awards of the commission, and would, if so construed, have totally obliterated the right of the appellant to apply for a reopening of his case, because, assuming that the award of August 27th, 1924, was final, the period of one year had expired long before the passage of the act. But it is apparent that the Legislature intended no such result, but understood and intended that its language should be interpreted as similar provi-

sions were construed in such cases as *Manning v. Carruthers, supra, Garrison v. Hill, supra,* and *Baumeister v. Silver, supra,* as meaning that rights existing at the time the act became effective must be asserted within one year thereafter. Under such a construction, rights arising before the act and rights arising thereafter would be affected alike, except that persons possessing rights arising before the act would have had a longer time, that is, the period between the time of the injury and the effective date of the act *plus* the period of limitations thereafter within which to assert them. But that difference was not considered substantial in the cases cited, and need not be so considered in this case.

It is contended that the act should not be interpreted as applying to any award made prior to its passage. But that contention is not only inconsistent with the actual language of the statute but also with its apparent purpose and intent. The rational basis of the policy underlying the act is that there be some definite time limit in respect to the award of compensation, in order that employers may organize their businesses and insurers adjust their rates with an intelligent comprehension of the demands they may be called upon to meet. That purpose would be largely frustrated if any claim which had been dealt with prior to the Act of 1931 could be again considered at any time in the future. And since all persons whose rights accrued prior to that act are accorded the same privilege of asserting them as is given to persons whose rights may have accrued, or may accrue subsequent thereto, the holders of such rights are not injured. There is therefore no sufficient reason for holding that the language of the act, that "no modification or change of any final award of compensation," means anything more or less than it says, and that it includes every final award, whether before or after the act.

Appellant also contends that the award of August 27th, 1924, was not "final," but that contention is inconsistent with the facts. In his original claim, the employee claimed "compensation for an injury due to an accident on July 31, 1924, in the course of his employment * * * as an electrician."

After notice to the employer and insurer, compensation was awarded upon that claim. It is true that in his claim he described the disability as temporary, and that in the physician's report filed with the claim it is described as temporary, but that did not make the award any the less final. What the commission considered under the claim was the extent and duration of the disability due to the injury, and it undertook by its award to finally deal with that question in the light of the evidence then before it. The fact that that evidence was erroneous did not affect the quality of the award as to finality, but merely gave the claimant a privilege to ask that the case be reopened. But the award did finally decide the case which the claimant brought before the commission, which was, what compensation he was entitled to receive for the disability caused by the injury.

Chapter 342 of the Acts of 1931 was approved April 17th, 1931, but under the Constitution of Maryland, article 16, it did not "take effect" until June 1st, 1931. There was an intimation that, even though it did not take effect until June, nevertheless the act measured the time within which the appellant was required to apply for a reopening of his case from the date of its approval, but the point was not pressed and may be disregarded.

The final question in the case therefore is whether the appellant applied for the reopening of his case within one year from June 1st, 1931, and that question turns upon whether the letter from his counsel to the commission of May 26th, 1932, can be considered an "application" within the meaning of the statute. In that letter counsel for the claimant stated the number of the claim and requested the commission to set down for a hearing the case of *Brantley Ireland v. William E. Shipley,* to determine the following issue: "To determine the nature and extent of permanent disability of the above claimant." Appellees contend that that is not a formal application within the meaning of the act, because it does not conform to the Rules of Procedure adopted and promulgated by the commission under the authority of the act. But that construction of the rules of the commission appears too

104

strained and tenuous, in view of the expressed legislative intent that the commission should ascertain the substantial rights of the parties and carry out justly the spirit of the article. Code, art. 101, sec. 10.

The rule upon which appellees rely is not in the record, and it may be doubted whether this court should take judicial notice of it, but, passing that point, and assuming that one dealing with an administrative agency is charged with knowledge of rules and regulations validly adopted by it, it cannot be said that rule 11, upon which they rely, and which is confined to applications under section 40, completely nullifies every application for reopening a case which does not conform in every particular to it. That rule requires the applicant to state to the commission in his application the facts alleged to constitute a change in "conditions", as a condition precedent to its granting a review. Its language differs from the language of section 40, to which it relates, which deals not with a change of "conditions" but with a change of "circumstances", which may or may not mean the same thing. But in any event there is no reason why one dealing with such an agency should be held to a stricter and more technical compliance with purely procedural regulations which it has adopted than if he were dealing with a court of record, where in most instances he would be entitled as a matter of right to amend his pleadings. In this particular case the applicant was dealing neither with a change in "conditions" nor a change in "circumstances," but with the facts that, at the time of the award, upon the evidence then before the commission, it assumed that a change would occur which in fact never has occurred, and that the injury which it then decided was temporary was not temporary but permanent.

The letter was at least a direct and plain application by the appellant for a reopening of his case, "to determine the nature and extent of permanent disability" of the claimant, and referred to the identical claim on which the award was based. If it was insufficient in form, the commission could have required him to amend it. It took no such action, nor

did it take any action until a more detailed statement was filed on August 9th, 1932.

Appellee infers from the failure of the commission to act prior to the filing of the second application that it refused to take action on it. But no such inference is justified. It did not "refuse" to act, but it failed to act prior to the second application, but when it did act it cannot be said from anything contained in the record that it considered only the second application, or that by filing that application the claimant abandoned the first. On the other hand, since the second application was filed after the expiration of one year next following the effective date of chapter 342 of the Acts of 1931, the commission had no jurisdiction to consider the case at all, if that was the beginning of the proceeding to reopen. And as we cannot assume that the commission acted illegally, it may be inferred that it treated the application of May 27th, 1932, as a sufficient compliance with its rules. The case of *Vang Construction Co. v. Marcoccia,* 154 Md. 401, 140 A. 712, cited by both parties to the appeal, is not in point. That case turned, not upon the insufficiency of an application actually made, but upon the fact that there had been no application at all within the period limited by the section of the statute then under consideration. The letter of May 27th, 1932, was a sufficient "application" to gratify the requirements of Code, art. 101, sec. 54, as amended by chapter 342 of the Acts of 1931, and since it was filed within one year from the effective date of the statute, the commission was authorized to deal with it as an application to reopen the case. Since it is not denied that, if the commission had such jurisdiction, it acted properly in making its award, the judgment appealed from must be reversed and the case remanded for further proceedings.

*Judgment reversed with costs, and case remanded for further proceedings.*