## STATE OF MARYLAND COMMISSION ON HUMAN RELATIONS *v.* AMECOM DIVISION OF LITTON SYSTEMS, INC.

[No. 155, September Term, 1975.]

*Decided July 12, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and █O'DONNELL, JJ.

*Philip J. Tierney, General Counsel,* with whom were *Jacob J. Edelman* and *Edelman, Levy & Rubenstein* on the brief, for appellant.

*C. Maurice Weidemeyer* and *Philip A. Dales, III,* with whom were *Basil E. Moore, Jr.,* and *Jeanette L. Thomas* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This action was commenced by the filing of a complaint with the United States Equal Employment Opportunity Commission on June 27, 1975. That complaint, in which the complainant, Patricia A. Carlson (Carlson), alleged unlawful discrimination on the basis of sex and retaliation for previous sworn testimony in the termination of her employment with appellee, Amecom Division of Litton Systems, Inc. (Amecom),[1] was referred pursuant to federal law to appellant, the Maryland Commission on Human Relations (the commission). *See* Equal Employment

---

[1] In her complaint Carlson alleged that her layoff on June 6 was "due to retaliation by the Company because of testimony [she] gave while under oath when [she] was subpoenaed by the Commission on Human Relations for the State of Maryland in November 1973 to testify in behalf of two former Amecom employees who had filed sex discrimination charges against the Company . . . and because of [her] sex." Nine other employees were discharged on the same day.

Opportunity Act of 1972, 42 U.S.C.A. § 2000e-5 (c) (1974). The commission, purportedly acting pursuant to Maryland Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.) Art. 49B, § 4, filed a bill of complaint for interlocutory injunction requiring reinstatement of Carlson pending administrative disposition of her complaint. The Circuit Court for Prince George's County (Couch, J.) dismissed the bill upon Amecom's motion. An appeal was taken and we granted certiorari prior to consideration by the Court of Special Appeals.

Carlson's employment with Amecom was terminated on June 6, 1975, and on June 27 she filed a complaint with the EEOC that was transferred in due course to the state commission. At its 1975 session, the General Assembly had enacted Chapter 419 of the Laws of 1975, now codified in Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.) Art. 49B, § 4, which provides that:

> "At any time after a complaint [alleging discrimination in public accommodations, employment or housing] has been filed, if the commission believes that appropriate civil action is necessary to preserve the status of the parties or to prevent irreparable harm from the time the complaint is filed until the time of its final disposition, the commission may bring action to obtain a temporary injunction. . . ."

In § 3 of Chapter 419 it was provided that the act take effect on July 1, 1975.

Amecom argued in the court below, as it does on appeal, that Art. 49B, § 4 should not be applied retroactively, that is, to alleged acts of discrimination that occurred before July 1, 1975, the effective date of the legislation, and that the relief sought was not authorized by the act since the term "status" refers to the position of the parties at the time the § 4 action is commenced and because the element of irreparable harm is lacking due to the availability of federal relief in the form of money damages for lost pay. The circuit court held that the act was procedural or remedial in nature and was thus to

be applied retroactively, but agreed with Amecom's alternative arguments and so dismissed the complaint. We shall affirm the decision of the court below solely on the grounds that Art. 49B, § 4 should be construed to apply prospectively with regard to alleged acts of discrimination, and thus we find it unnecessary to reach the question whether § 4 authorizes an injunction ordering reinstatement of an employee in an action brought subsequent to the termination of his employment.[2]

A retroactive statute is one which purports to determine the legal significance of acts or events that have occurred prior to the statute's effective date. See Greenblatt, *Judicial Limitations on Retroactive Civil Litigation*, 51 Nw.U.L.Rev. 540, 544 (1956). Thus a statute, though applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, when applied so as to determine the legal significance of acts or events that occurred prior to its effective date, applied retroactively. Application of § 4 to a case such as this, where an alleged discriminatory discharge occurred prior to the effective date of the statute, would effect a reversal of a previous act, the discharge, and would thus be retroactive in its impact. Section 4 must, therefore, be applied retroactively if Carlson is to be granted the relief sought by the commission.

There is, of course, no absolute prohibition against retroactive application of a statute. If the Legislature intends that a law affecting rights or matters of substance operate retrospectively, that intent will be given effect so long as constitutional prohibitions are not violated. *Janda v. General Motors*, 237 Md. 161, 169, 205 A. 2d 228 (1964). Because of the potential for interference with substantive rights, however, and because of the resulting prejudice against retroactive application, the presumed intent is that

---

**2.** No cross appeal was filed by Amecom from the refusal by the circuit court to grant its motion to dismiss on the grounds that the act should not be given retroactive application. Where, as here, however, appellee seeks only affirmance of the final decree of the lower court, no cross appeal is necessary to assign any error of the lower court in support of that decree, so long as the issue was otherwise preserved for appeal. See Capron v. Mandel, 250 Md. 255, 259, 241 A. 2d 892 (1968).

statutes operate prospectively and are to be construed accordingly. *Rigger v. Baltimore County,* 269 Md. 306, 310, 305 A. 2d 128 (1973); *Kastendike v. Baltimore Ass'n,* 267 Md. 389, 395-96, 297 A. 2d 745 (1972); *State Farm v. Hearn,* 242 Md. 575, 582, 219 A. 2d 820 (1966); *Bell v. State,* 236 Md. 356, 369, 204 A. 2d 54 (1964); *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 253-54, 137 A. 2d 680 (1958); *Kelch v. Keehn,* 183 Md. 140, 143-44, 36 A. 2d 544 (1944) (and cases cited therein). Nevertheless, if the statute contains a clear expression of intent that it operate retrospectively, *see State Farm v. Hearn, supra,* 242 Md. at 582; *Bell v. State, supra,* 236 Md. at 369; *Tax Comm. v. Power Company,* 182 Md. 111, 117, 32 A. 2d 382 (1943), or the statute affects only procedures or remedies, *Luxmanor Citizens v. Burkart,* 266 Md. 631, 644-45, 296 A. 2d 403 (1972); *Janda v. General Motors, supra,* 237 Md. at 168; *Richardson v. Richardson,* 217 Md. 316, 320, 142 A. 2d 550 (1958); *Ireland v. Shipley,* 165 Md. 90, 98, 166 A. 593 (1933), it will be given retroactive application.

No expression whatsoever of an intent that the act operate retroactively appears in Chapter 419. Nor, in our view, is § 4 merely remedial or procedural in nature. Chapter 419 was a legislative response to the October 1974 decision of this Court in *Gutwein v. Easton Publishing Co.,* 272 Md. 563, 325 A. 2d 740 (1974), *cert. denied,* 420 U. S. 991 (1975). There we noted that the purpose of the employment discrimination subtitle of Article 49B was, as then set forth in Code (1957, 1972 Repl. Vol.) Art. 49B, § 17,

> ". . . to assure all persons equal opportunity in receiving employment and in all labor management-union relations regardless of race, color, religion, ancestry or national origin, sex, or age . . ."

and to that end, that the particular subtitle sought

> ". . . to prohibit discrimination in employment by any person, group, labor organization, organization or any employer or his agents."

Nonetheless, we held in *Gutwein* that even given a

determination that an unlawfully discriminatory discharge under Art. 49B, § 19 (a) had occurred, the commission was not authorized by § 14 (e), which empowers the commission to issue an order requiring the respondent to cease and desist from the discriminatory acts and "to take such affirmative action as will effectuate the purposes of the particular subtitle," to make awards of back pay in light of the "prohibitory," as opposed to "compensatory," nature of the employment discrimination subtitle. In April 1975, only six months after the decision in *Gutwein*, the General Assembly enacted Chapter 419. In declining to authorize the awarding of damages for lost wages, the Legislature sought through Chapter 419 to substantially eliminate the need for such damages by authorizing instead interlocutory injunctive relief in order that the status of the parties be preserved pending a determination on the merits. In so doing, however, the Legislature created an action based on what amounts to a new substantive right.

An act is remedial in nature when it provides only for a new method of enforcement of a preexisting right. *See Kelch v. Keehn, supra,* 183 Md. at 145; *Ireland v. Shipley, supra,* 165 Md. at 98. Chapter 419, however, goes further and provides a remedy based, not upon a preexisting right, in this case the right to be free from acts of discrimination in employment, but upon the mere filing of a complaint alleging discriminatory acts. Such an interlocutory remedy, available without a determination on the merits that a preexisting right exists, cannot, then, constitute simply a new method for enforcement of the undetermined right, but must instead be deemed itself to create in effect a new substantive right.

Thus, this case is unlike the federal cases, such as *Koger v. Ball,* 497 F. 2d 702 (4th Cir. 1974), relied on by the commission, giving retroactive operation to the provisions of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq. (1972), with regard to claims of federal employees based upon acts antedating the effective date of the Act. The court in *Koger,* for example, held that the Constitution, statutes, and executive orders had previously

granted federal employees the right to be free from discrimination in their employment; section 717 (c) of the Act, it was held, simply created a new judicial remedy for enforcement of that right. 497 F. 2d at 705. But more importantly for our purposes, the judicial remedy provided in the federal Act was available only after a determination on the merits of the complaint. Had the General Assembly here authorized, instead, awards of damages for lost pay after determination according to law that an act of discrimination had occurred, that authorization more likely would have been deemed merely remedial in nature and thus entitled to retroactive effect. Here, however, in creating an interlocutory remedy available without a determination on the merits establishing a preexisting right, the Legislature has created, in effect, a new substantive right. We therefore hold that the act is to be applied prospectively only with regard to the alleged acts of discrimination.

Underlying this discussion, of course, is the assumption that a substantive right of the employer is affected by § 4. The cases speak of creation of a substantive right and interference with a substantive right interchangeably in considering the rule of construction in question.

Here, the substantive right of the employer affected by operation of § 4 is his right to terminate an employee in accordance with the terms of his contract. The rule at common law was that an employment at will might be terminated by the employer (or employee) at his pleasure. *See Vincent v. Palmer*, 179 Md. 365, 370-71, 19 A. 2d 183 (1941); *W., B. & A.R.R. Co. v. Moss*, 127 Md. 12, 21, 96 A. 273 (1915). A law affects substantive rights where the terms of a contract are altered. *State Farm v. Hearn, supra*, 242 Md. at 582-83. Section 4 abrogates the right of an employer to terminate at his pleasure an employee at will, a right established by contract, subject only to a determination on the merits that the act of termination was in violation of the antidiscrimination provisions of Article 49B.

We are not to be understood, however, as holding that § 4 is inapplicable merely because the employment happens to have commenced prior to the effective date of the statute,

where the act of discrimination occurs thereafter. While it is true that the contractual right of the employer at will to terminate the employee at his pleasure accrues when the contract of employment is entered into, the purpose of § 4 may only be adequately served by retroactive application with regard to the date of formation of the contract. For it is, perhaps, equally well settled that where prospective application of a law is inconsistent with the nature and purpose of the legislation, retroactive effect will be given. *Tax Comm. v. Power Company, supra,* 182 Md. at 117; *Ireland v. Shipley, supra,* 165 Md. at 98. The result of a construction of § 4 giving it effect only with regard to contracts of employment entered into after July 1, 1975, would mean that an employee of long standing would find the § 4 remedy unavailable while a new employee could receive its benefits. Such an absurd result could not have been intended and runs contrary to the purpose of the law. We hold, therefore, only that § 4 is unavailable where the act of discrimination alleged in the complaint occurred prior to the effective date of the statute.

*Judgment affirmed; appellant to pay costs.*