Dear Commissioner Larsen:
You have requested our opinion concerning the application of Chapter 163 of the Laws of Maryland 1997 to claims submitted to a health benefits carrier prior to the law's effective date. The Insurance Administration, relying on an advice letter from this office, has taken the position that Chapter 163 applies to all retroactive denials of claims that occur on or after October 1, 1997, the effective date of Chapter 163. At least one carrier, however, has suggested that this interpretation is incorrect, amounting to an improper retrospective application of the statute.[1]
Our opinion is that the Insurance Administration has correctly construed Chapter 163's applicability: Chapter 163 applies to retroactive denials of claims that occur on or after October 1, 1997, regardless of the date that the claim was originally paid.[2]
 I Chapter 163 — Construction and Prospective Application
The retrospective application of a statute has been described by the Court of Appeals as "one which purports to determine the legal significance of acts or events that have occurred prior to the statute's effective date." Commission on Human Relations v.Amecon Division, 278 Md. 120, 123, 360 A.2d 1 (1976). When a discrete "act or event" occurs and a legal consequence becomes fixed at that time (liability, for example), a later-enacted statute that changes the legal consequence (by eliminating liability, for example) is to be classified as retrospective.[3] A statute that simply imposes new requirements, however, when someone performs an act or event after the effective date is to be classified as prospective.
Chapter 163 (Senate Bill 335) of the Laws of Maryland 1997, which is codified in § 15-1008 of the Insurance ("IN") Article, was enacted for the purpose of "restricting the time period during which certain health insurance carriers may retroactively deny reimbursement to health care providers under certain circumstances." The time limit is generally six months. IN, § 15-1008(b)(1)(ii). The time limit is extended to 18 months if the basis for the retroactive denial is coordination of benefits with another carrier, Medicare, or Medicaid. IN, § 15-1008(b)(1)(i). There is no time limit if the basis for the retroactive denial is fraud or improper coding. IN, § 15-1008(d). Section 3 of the Act contained the standard effective date provision: "[T]his Act shall take effect October 1, 1997."
The discrete action called a "retroactive denial" is the linchpin of the entire statutory scheme. The time limits on most retroactive denials apply only "[i]f a carrier retroactively denies reimbursement to a health care provider. . . ." IN, § 15-1008(b)(1). The phrase "retroactively denies reimbursement" is not defined, but its meaning is evident from context. It is an action with two linked components: the carrier's decision to deny a provider's claim for a specific reason that purportedly justifies denial, under the contractual relationship between the provider and the carrier or, in the case of noncontractual providers, other applicable legal principles; and self-help action by the carrier to recoup the money previously paid, by reducing future reimbursements.
The first component of the meaning of "retroactive denial" is evidenced by IN, § 15-1008(b)(2)(i), which provides that: "A carrier that retroactively denies reimbursement to a health care provider . . . shall provide the health care provider with a written statement specifying the basis for the retroactive denial." The second component of the concept is evidenced by IN, § 15-1008(c), which provides that a carrier that fails to comply with the deadlines for retroactive denials "may not retroactively deny reimbursement or attempt in any manner to retroactively collect reimbursement already paid to a health care provider by reducing reimbursements currently owed to the health care provider, withholding future reimbursement, or in any other manner affecting the future reimbursement to the health care provider."
Nowhere in Chapter 163 is there any indication that the General Assembly intended to affect the carrier's legal right to obtain repayment of wrongfully paid claims other than by recapturing the amount from the future reimbursement stream to the provider. In other words, nothing in Chapter 163 prevents a carrier from demanding repayment of allegedly incorrectly paid claims or from bringing suit on a breach of contract or other theory seeking to be compensated for the improperly paid claim. Chapter 163 imposes its deadlines only when, on or after October 1, 1997, the carrier combines the announcement of the denial of a previously paid claim with an intention to recoup the amount from the provider's future reimbursement.
The legislative history supports this understanding of Chapter 163. For example, the bill analysis of Senate Bill 335, prepared for the House Economic Matters Committee, observed as follows: "As a matter of practice, carriers sometimes will make a deduction from payment for a service rendered to a particular patient an amount equivalent to payment for an unrelated service for a different patient, if the carrier has decided retrospectively that the unrelated service was not covered and the claim should not have been paid. This practice is not regulated under current law." The objective of Senate Bill 335, it is evident, was to regulate "this practice."[4]
The Insurance Administration's understanding of Chapter 163 likewise accords with this construction. As the Associate Commissioner for Life and Health recently wrote:
 The statute describes the specific manner in which a carrier may retroactively collect reimbursement already paid, and prohibits that manner of collection unless the collection occurs during the 6th month after a claim is paid (or 18 month period for coordination of benefits). The MIA interpretation, therefore, does not extinguish the right of a carrier to collect improper payments made before April 1, 1997, but merely prevents the carrier from retroactively collecting a reimbursement in the specific manner described in the statute. To avert unjust enrichment of the provider, the carrier may submit an invoice to the provider or use other legal process to collect a reimbursement a carrier determines may have been improper.
Letter from Donna B. Imhoff to Thomas P. Barbera (April 3, 1998). As a construction of the statute not long after its enactment by the agency responsible for its administration, this interpretation is entitled to special deference. See, e.g., Zappone v. LibertyLife Ins. Co., 349 Md. 45, 65, 706 A.2d 1060 (1998).
An example will clarify Chapter 163's effect: Suppose that in March 1997 a physician submitted a properly coded but erroneous claim for $20,000. The correct amount should have been $2,000, but because of nonfraudulent clerical error, this claim was excessive by $18,000. If the carrier noticed the error on or after October 1, 1997, the carrier would not be barred from any effort to collect the $18,000 overpayment. To be sure, as a result of Chapter 163, the carrier could not avail itself of the self-help remedy of retroactive denial. But the carrier remains free to send a demand letter, which on these facts should be enough to obtain repayment. If not, the carrier could sue for the overpayment.
Accordingly, we conclude that Chapter 163 is prospective, not retrospective. It does not "purpor[t] to determine the legal significance of acts or events that have occurred prior to the statute's effective date." Amecon Division, 278 Md. at 123. The relevant act or event — the retroactive denial — occurs after the effective date.
 II Retrospective Adjustment of Remedies
Even if, contrary to our conclusion, Chapter 163 were deemed retrospective — that is, if the relevant act or event were thought to be the payment of the claim, rather than its retroactive denial — retrospective application would be permissible. This is so because when a statute merely affects procedures or remedies, the statute applies retrospectively unless the General Assembly clearly indicates otherwise:
 Ordinarily, there is no vested right in procedures utilized to enforce substantive rights. Consequently, a change in the law that does not impair existing substantive rights but only alters the procedures involved in the enforcement of those rights ordinarily applies to all actions whether accrued, pending, or future unless a contrary intention is expressed.
Mraz v. County Comm'rs, 291 Md. 81, 90, 433 A.2d 771 (1981) (citations omitted).
Chapter 163 only limits the time within which the self-help remedy of retroactive denial may be invoked. The statute affects but a single remedy, leaving others unaffected. Therefore, even if Chapter 163 were to be characterized as retrospective in its effect, nevertheless it properly may be applied to retroactive denials arising from claims paid prior to the effective date.
 III Conclusion
In summary, it is our opinion that Chapter 163 of the Laws of Maryland 1997 applies to all retroactive denials of claims on or after October 1, 1997.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] To avoid confusion, we use the terms "prospective" and "retrospective" in discussing the manner in which Chapter 163 is to be applied. Often, the courts speak of "retroactive" application of a statute. See, e.g., Waters Landing L'tdPartnership v. Montgomery County, 337 Md. 15, 28, 650 A.2d 712
(1994). Because the provision at issue itself uses the term "retroactive," however, we will use the term "retrospective" when addressing the statutory construction issue.
[2] Thus, we agree with the conclusion stated in a letter from Assistant Attorney General Kathryn M. Rowe to Delegate John P. Donoghue (November 18, 1997). In this regard, we note that neither Ms. Rowe's letter nor this opinion addresses Chapter 163's applicability to the medical claims payment process, including subrogation claims, under the Maryland Workers' Compensation Act.
[3] "As a general rule of construction, statutes are presumed to operate only prospectively, unless the Legislature clearly expresses an intent that the statute apply [retrospectively]." Waters Landing L'td Partnership v. MontgomeryCounty, 337 Md. at 28. See also, e.g., Arundel Corp. v. CountyComm'rs, 323 Md. 504, 509, 594 A.2d 95 (1991); Washington Sub.San. Comm'n v. Riverdale Heights Vol. Fire Co., 308 Md. 556,560-61, 520 A.2d 1319 (1987).
[4] Advocates for Senate Bill 335 provided the General Assembly with examples of, to quote one of them, "the concerns of my colleagues with the policy that allows insurance carriers to retroactively deny and recoup monies from claims that were paid a number of years ago. These recoupments are a bookkeeping nightmare for a physician's office, and cause undue problems for our patients." Letter from Dr. Patricia Savadel, President of the Maryland Society for Internal Medicine, to Senator Thomas L. Bromwell (February 14, 1997). See also, e.g., letter from Dr. Willarda V. Edwards to Senator Thomas Bromwell (February 11, 1997). These examples support the inference "that the General Assembly probably legislated within the confines of the problem advocates and others put before it." Jack Schwartz and Amanda Stakem Conn, The Court of Appeals at the Cocktail Party: The Useand Misuse of Legislative History, 54 Md. L.Rev. 432, 463 (1995).
 *Page 180