803 A.2d 527

STATE of Maryland COMMISSION ON HUMAN RELATIONS

v.

TALBOT COUNTY DETENTION CENTER.

No. 122, Sept. Term, 2001.

Court of Appeals of Maryland.

July 23, 2002.

Elizabeth Colette, Asst. General Counsel (Glendora C. Hughes, General Counsel, on brief), Baltimore, for appellant.

John F. Breads of Columbia (Michael L. Pullen, County Atty., on brief), Easton, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J.

This Court must determine whether a circuit court has subject matter jurisdiction to grant injunctive relief to the Maryland Commission on Human Relations from interference with its administrative investigation into two employment discrimination complaints filed against the Talbot County Detention Center, and if so, whether injunctive relief should have

been granted in this case. We answer in the affirmative to both questions.

## I. Background

The Maryland Commission on Human Relations ("Commission") is an independent agency charged with investigating complaints of discrimination in employment, housing and public accommodations under Article 49B of the Maryland Code and bringing legal and equitable actions pertaining to those violations. *See* Md.Code (1957, 1998 Repl.Vol.), Art. 49B, § 10.[1] Two verified complaints of employment discrimination

---

1. The enforcement powers of the Maryland Human Relations Commission are provided in Article 49B, Section 10, which states:

 Investigation; findings; agreement for elimination of discrimination; appeals

 (a) After the filing of any complaint the Executive Director shall consider the complaint and shall refer it to the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation (hereinafter referred to as the "respondent"), against whom or which the complaint is made. (b) If the finding is that there is probable cause for believing a discriminatory act has been or is being committed within the scope of any of these subtitles, the Commission's staff immediately shall endeavor to eliminate the discrimination by conference, conciliation, and persuasion, and shall forward a written copy of the findings of any investigation of a real estate broker, associate real estate broker, or real estate salesperson to the State Real Estate Commission. (c) If an agreement is reached for the elimination of the discrimination as a result of the conference, conciliation and persuasion the agreement shall be reduced to writing and signed by the respondent, and an order shall be entered by the Commission setting forth the terms of the agreement. The Commission shall not enter an order at this stage of the proceedings unless it is based upon a written agreement. If no such agreement can be reached, a finding to that effect shall be made and reduced to writing with copies furnished to the complainant and to the respondent. (d) A denial of the request for reconsideration of a finding of no probable cause by the Commission is a final order appealable to the circuit court as provided in § 10–222 of the State Government Article of this Code provided that the United States Equal Employment Opportunity Commission does not have jurisdiction over the subject matter of the complaint.

were filed with the Commission against the Talbot County Detention Center ("Detention Center").[2] One complainant alleged that he had been subject to race and gender discrimination in the workplace, the Talbot County Detention Center, and another alleged that she had been sexually harassed in the same workplace.

In accordance with statutory obligations, the Executive Director referred the complaints to the Commission staff to investigate and ascertain facts surrounding the allegations. *See* Art. 49B, § 10. As part of its investigation, the Commission conducted, or attempted to conduct, numerous interviews of employees of the Detention Center. According to the Commission, however, these interviews were seriously impeded by the Detention Center's interference, namely, its efforts to discourage nonparty witnesses (other employees) from participating in the interviews and its insistence on appearing at confidential interviews of witnesses.

---

**2.** The Commission's authority to investigate a complaint is triggered when the complaint satisfies certain requirements outlined in Section 9A of Article 49B:

(a) Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission (hereinafter referred to as the "Commission") a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, State agency, department or board alleged to have committed the act of discrimination together with the particulars thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission. A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article. A complaint filed with the federal or with a local human relations commission within six months from the date of occurrence shall be deemed to have complied with the provisions of this section.

(b) Whenever the Commission has received reliable information from any individual or individuals that any person has been engaged or is engaged in any discriminatory practice within the scope of this article, and after a preliminary investigation by the Commission's staff authorized by the Chairman or Vice–Chairman it is satisfied that said information warrants the filing of a complaint, the Commission, on its own motion, and by action of not less than three commissioners, may issue a complaint in its name in the same manner as if the complaint had been filed by an individual.

As a result, on June 29, 2001, the Commission sought injunctive relief in the Circuit Court for Talbot County to stop the Detention Center from obstructing the Commission's investigation of employment discrimination. The Commission's petition for injunctive relief sought to

> prohibit [the Detention Center] and [its] agents from appearing at confidential witness interviews, or influencing witness testimony with regard to the instant investigation into allegations of employment discrimination, and from contacting Commission investigative staff, except as required by the investigation, and that the injunction remain in effect until the completion of the administrative proceedings, and that [the Detention Center] post notices in the workplace, as approved by the Commission, setting forth the State's anti-discrimination law, including a statement that it is unlawful for an employer to retaliate against one who files, or participates as a witness in, a complaint of discrimination, . . .

The Detention Center, in its response dated July 3, 2001, asserted that the Circuit Court lacked subject matter jurisdiction over the Petition for Temporary Injunctive Relief. The Detention Center further alleged that the Commission's authority to investigate was limited to the investigative mechanisms set forth in Title 14, Subtitle 3 of the Code of Maryland Regulations.[3] Specifically, the Detention Center argued that

---

3. The Code of Maryland Regulations, Title 14, subtitle 3 provides, in relevant part:

C. Conduct of Investigation.
(1) Fact–Finding Conference. The Executive Director or designee may require that the complainant and respondent appear at a fact-finding conference . . .

\* \* \*

(2) Request for Information.
(a) The Executive Director or designee shall require the respondent to promptly provide answers to requests for information, which will be used to assist in determining the merits of the allegations contained in the complaint.

\* \* \*

(3) Interrogatories—Content and Response.

the Commission is *only* allowed to: (1) require a fact-finding conference; (2) require the respondent to promptly provide answers to requests for information; (3) serve interrogatories on a respondent; and (4) issue subpoenas, if necessary, to

(a) The investigator may, upon authorization of the Executive Director or designee, serve interrogatories on a respondent by registered or certified mail or by personal service.

\* \* \*

(4) Interrogatories—Default Procedure.

(a) If, after a respondent has been served with duly authorized interrogatories together with a notice of the consequences of the failure to answer them, the respondent fails either to answer the interrogatories or to file a motion to strike or exceptions to the interrogatories within the time specified, the Executive Director or designee shall serve or cause to be served upon the respondent the following notice: "Notice is hereby given that a complaint has been served upon you alleging that you have violated Article 49B, Annotated Code of Maryland. Pursuant to this Commission's authority under Article 49B, interrogatories have been served upon you. These interrogatories have not been answered. Your failure to answer fully the interrogatories under oath within 5 days may result in the entry of a default in the matter of this complaint. This default order may include the following sanctions:

(i) An admission that the interrogatories, if answered, would have established facts consistent with the claim of the complainant;

(ii) A waiver of your right to have this Commission conduct further investigation, find whether there is probable cause, make conciliation efforts, or hold a hearing allowing the presentation of any and all defenses to the complaint which you might have otherwise raised. In order to avoid a default from occurring, you must answer fully the interrogatories on or before the 5th day following the date of your receipt of this notice."

\* \* \*

(5) Investigatory Subpoena.

(a) If completion of an investigation requires the issuance of a subpoena, the investigator may, upon the written authorization of the Executive Director or designee, issue a subpoena to compel the attendance and testimony of witnesses, or a subpoena to compel the production of books, papers, records, and documents relevant or necessary to this investigation. Service of this subpoena shall be made in accordance with Article 49B, Annotated Code of Maryland. . . .

(b) Upon failure by the person subpoenaed to appear, to produce these records, documents, papers, or books, or all of these, the Executive Director or designee may apply to the circuit court in the county having jurisdiction or to the Circuit Court for Baltimore City for an order requiring the attendance and testimony of the person subpoenaed, or the production of the requested records, documents, papers, books, or both.

compel the attendance and testimony of witnesses or the production of documents. *See* COMAR 14.03.01.04. With respect to the latter, the Detention Center claimed that the use of the word "testimony" indicated that the Commission's interviews of the witnesses should be formal recorded proceedings, and thus the Commission had no authority to conduct interviews confidentially and in the absence of a representative from the Detention Center.

On August 17, 2001, the Circuit Court heard oral argument on the Commission's petition and, ruling from the bench, denied the Commission injunctive relief. In so ruling, the Circuit Court stated,

> [w]hat you are asking the Court to do is to tell counsel or anyone not to go to your office and this is your office, you have control over it . . . . if this is your investigation then you can conduct it in your own office, on your own terms. And I don't see why the Court has to get involved in this. You also asked me to prevent . . . [the Detention Center] or their agents from contacting the Commission's investigation staff. . . .

> \* \* \*

> but *that is not this Court's function* to step in here and tell them not to call your office . . . . you haven't even filed a complaint against the Detention Center. You don't even know at this time that there is a reason to do that, you haven't held a hearing. So it seems to me that *what you are asking the Court to do is not what was intended by granting the Court this authority.*

> \* \* \*

> And . . . the other thing is you want to prevent the agents of the Detention Center from contacting or influencing witness testimony . . . . *that is not the purpose of this statutory provision* . . . it seems to me you have a right to conduct an investigation under the law. And how you do that at this

stage is not the Court's interest.... So the Court will deny the requested injunction.

(emphasis added). It is unclear from the Circuit Court's verbal ruling whether its denial of the injunction was based upon a lack of subject matter jurisdiction, as was initially proffered by the Detention Center, or whether the denial itself was an exercise of the Circuit Court's discretion. The parties have proceeded on the assumption that the court's denial of injunctive relief was for lack of subject matter jurisdiction. Our discussion will address this premise as well as the propriety of the Circuit Court's denial of the injunction based on the merits of this case.

The Commission appealed the Circuit Court's denial of the injunction to the Court of Special Appeals, and this Court ordered, on its own initiative, that a writ of certiorari be issued to consider whether the Circuit Court's conclusion was erroneous as a matter of law.

## II. Standard of Review

Generally, appellate courts review a trial court's determination to grant or deny injunctive relief for an abuse of discretion because trial courts, sitting as courts of equity, are granted broad discretionary authority to issue equitable relief. *See J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Comm.*, 368 Md. 71, 93, 792 A.2d 288, 301 (2002). *See El Bey v. Moorish Sci. Temple of Am.*, 362 Md. 339, 354–55, 765 A.2d 132, 140 (2001) (stating that while normally a trial court's decision to grant or deny injunctive relief is reviewed for an abuse of discretion, "no such deference [is given] when we find 'an obvious error in the application of the principles of equity'") (quoting *Western Md. Dairy, Inc. v. Chenowith*, 180 Md. 236, 244, 23 A.2d 660, 665 (1942)); *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 361 Md. 371, 394, 761 A.2d 899, 911 (2000). When injunctive relief is provided by statute, however, a court's decision to issue injunctive relief is no longer rooted in traditional principles of equity; rather, it is based upon the statutory guidelines. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497, 121 S.Ct.

1711, 1721, 149 L.Ed.2d 722, 736 (2001) ("a court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.' ... A district court cannot, for example, override Congress' policy choice, articulated in a statute as to what behavior should be prohibited.") (internal citations omitted); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91, 99 (1982)(stating that "Congress may *intervene and guide or control the exercise of the courts' discretion.*") (emphasis added); *United States v. Massachusetts Water Res. Auth.,* 256 F.3d 36, 47 (1st Cir.2001). Rather than relying on the broader notions in equity, our Legislature provided explicit guidelines within which a court must exercise its authority to issue an injunction; thus, it is these criteria to which we look when determining whether the court's decision to grant or deny injunctive relief was appropriate.

We digress momentarily to note that the degree of discretionary authority a court maintains when considering injunctions sought pursuant to, and authorized by, a specific statute is a novel question, not explored by this Court to date. Federal jurisdictions, including the United States Supreme Court, have had the opportunity to consider the inherent differences that exist when a court is asked to issue injunctive relief under its equitable powers versus when the court entertains requests for injunctive relief pursuant to a specific statute and have outlined some considerations for determining whether equitable powers are usurped by statutory mandates. On one end of the spectrum, in *Tennessee Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), the Supreme Court held that Congress, in the Endangered Species Act, clearly circumscribed the courts' jurisdiction in equity because the statute contained a blanket prohibition against "jeopardiz[ing] the continued existence of endangered species;" thus, upon a concession that the Tellico Dam would destroy the snail darter, the court was required to issue an injunction. *Id.* at 193–95, 98 S.Ct. at 2301–02, 57 L.Ed.2d at 146–47.

In other cases, however, the Supreme Court has refused to find that other statutes spawned an absolute duty upon courts to issue injunctive relief. Most recently, in *United States v. Oakland Cannibus Buyers Co-op., supra,* the Supreme Court emphasized that its ruling in *Hill,* i.e. that the District Court lacked discretion to deny an injunction, was based solely on the fact that an injunction in that case was the "only means of ensuring compliance" with the statute and the "order of priorities" established by Congress would otherwise be "deprived of effect." *Oakland Cannibus Buyers Co-op.,* 532 U.S. at 496–97, 121 S.Ct. at 1721, 149 L.Ed.2d at 735–36. *See also Romero–Barcelo,* 456 U.S. at 313, 102 S.Ct. at 1803, 72 L.Ed.2d at 99 (stating that while "Congress may intervene and guide or control the exercise of the courts' discretion, . . . we do not lightly assume that Congress has intended to depart from established principles [of equitable jurisdiction]")(internal quotations omitted). As the Supreme Court pointed out in *Romero–Barcelo, supra,* "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." 456 U.S. at 313, 102 S.Ct. at 1803, 72 L.Ed.2d at 99.

In the case *sub judice,* we are not presented with requests to enjoin actions which violate the law; rather we are presented with requests to enjoin actions which arguably impede the Commission from performing a lawful task, i.e. conducting an uninhibited investigation, actions for which irreparable harm must be evidenced. Section 4 of Article 49B grants the Commission the power to bring a civil action for injunctive relief, outlines when and where such action can be brought, and further establishes the criteria under which an injunction may be sought and granted, i.e. "to preserve the status of the parties or to prevent irreparable harm." While Section 4 does not expressly eliminate the circuit court's discretionary authority or expressly create an automatic injunction, it does, in a sense, "narrow" the circuit court's discretionary authority by replacing the considerations in eq-

uity with the statutory criteria: the Commission need only establish a reasonable necessity for an injunction "to preserve the status of the parties or prevent irreparable harm." Art. 49B, § 4.

Again, while the statute in question may confine the judicial discretion, it does not altogether eliminate it. In *United States Postal Service v. Beamish*, 466 F.2d 804 (3rd% Cir. 1972), the Court of Appeals for the Third Circuit affirmed an injunction by the district court even though the district court did not apply traditional equitable standards. The Third Circuit held that the statute under which the injunction was sought clearly circumscribed the traditional equitable discretion that courts possess in granting injunctive relief. *See Beamish*, 466 F.2d at 806. The statute provided that "the United States district court ... shall ... upon a showing of probable cause to believe [that 39 U.S.C. § 3005] is being violated, enter a temporary restraining order and preliminary injunction ..." *Id.* (quoting 39 U.S.C. § 3007). The critical difference between the statute in *Beamish* and the statute before us today is that the *Beamish* provision spoke *directly to the judiciary* concerning its authority, or rather its duty, to issue an injunction upon a showing of probable cause. Conversely, in Article 49B, Section 4, the Legislature authorizes the Commission to bring action for injunctive relief when reasonably necessary to prevent irreparable harm or preserve the status of the parties. While the Legislature establishes statutory guidelines for the issuance of injunctive relief, it *does not directly eliminate a court's discretion by mandating a certain outcome.* Thus, we shall consider the propriety of the court's decision to deny injunctive relief with the understanding that the court's equitable discretion is limited to the extent that the Legislature articulated the applicable guidelines for injunctive relief.

III. Discussion

Maryland's anti-discrimination laws are embodied in Article 49B of the Maryland Code, as is the Commission's investigatory and enforcement authority with respect to the anti-discrimi-

nation legislation. The Commission's comprehensive investigatory powers include the authority to hold investigatory hearings for fact finding, file civil actions for injunctive relief, receive and issue complaints alleging discrimination, conduct investigations into discrimination complaints, endeavor to reach conciliation between the parties, and initiate and pursue litigation to enforce compliance. *See* Md.Code, Art. 49B, §§ 3, 4, 9A, 10, 11, 12; *Molesworth v. Brandon,* 341 Md. 621, 631, 672 A.2d 608, 613 (1996)(citing *Weathersby v. Kentucky Fried Chicken Nat'l Management Co.,* 86 Md.App. 533, 545, 587 A.2d 569, 574 (1991); *rev'd on other grounds,* 326 Md. 663, 607 A.2d 8 (1992)); *Gutwein v. Easton Publishing Co.,* 272 Md. 563, 564–65, 325 A.2d 740, 741 (1974). The Commission's enforcement powers, then, cover the gamut, from investigation to commencement and pursuit of litigation.

A. Subject Matter Jurisdiction

█ As noted, the Commission's powers include the power to bring a civil action to obtain an injunction pursuant to Section 4 of Article 49B. Section 4 states:

> *At any time after a complaint has been filed,* if the Commission believes that appropriate civil action is necessary *to preserve the status of the parties or to prevent irreparable harm* from the time the complaint is filed until the time of its final disposition, the Commission may bring action to obtain a temporary injunction. The action shall be brought in the circuit court for the county where the place of public accommodation which is the subject of the alleged discrimination is located, or where the unlawful employment practice is alleged to have occurred, or where the dwelling which is the subject of the alleged discrimination is located.

Md.Code, Art. 49B, § 4 (emphasis added). Section 4 clearly provides a circuit court with statutory jurisdiction to issue injunctive relief at any time after a complaint has been filed with the Commission. Thus, a circuit court's authority to entertain actions for injunctive relief and issue appropriate orders while discrimination complaints are pending before the

 

Commission is absolute and unmistakable. Any conclusion to the contrary by the Circuit Court is erroneous.

 The Circuit Court also claimed that it had no authority to instruct counsel for the Detention Center not to appear at witness interviews and not to contact witnesses or investigative agents. The Circuit Court further commented that the Commission "[hasn't] even filed a complaint against the Detention Center ... [it doesn't] even know at this time that there is a reason to do that, [it hasn't] held a hearing." The Circuit Court erred in basing its ruling on the fact that the Commission had not filed a complaint against the Detention Center; the Circuit Court's authority to review claims for injunctive relief is triggered upon a filing of a complaint with the Commission, not upon the Commission's filing of a complaint against the employer. *See* Md.Code, Art. 49B, § 4. The Circuit Court did have jurisdiction to issue an injunction, an injunction that might specifically instruct the Detention Center not to appear at interviews and not to contact witnesses, and generally speaking, to prevent the frustration of an investigation by the Commission.

 With subject matter jurisdiction of the Circuit Court confirmed, we pause to note this Court's authority under Section 12–301 of the Courts and Judicial Proceedings Article [4] to review final judgments of the circuit courts, including judgments denying a request for injunctive relief, and our authority, pursuant to Maryland Rule 8–604(e),[5] to order the

---

4. Section 12–301 of the Courts and Judicial Proceedings Article provides:

 Except as provided in §. 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

5. Rule 8–604(e) provides that "[i]n reversing or modifying a judgment in whole or in part, the Court may enter an appropriate judgment

issuance of injunctive relief. Therefore, we will review the propriety of the Commission's request for injunctive relief, the Detention Center's counter-arguments, and the Circuit Court's ruling and, where appropriate, order the issuance of an injunction as requested by the Commission.

## B. Investigative Mechanisms of the Commission

Prior to determining the propriety of injunctive relief, however, we shall pause to discuss a few procedural arguments raised by the Detention Center concerning the methods by which the Commission is authorized the conduct its preliminary investigations into employment discrimination claims. The Detention Center alleges that the Commission is limited to the formal investigative mechanisms described in the Code of Maryland Regulations. Specifically, the Detention Center argues that because COMAR 14.03.01.04(5)(a) provides that a subpoena may "compel the attendance and *testimony* of witnesses," the fact-finding interviews of witnesses must be recorded and taken under oath. COMAR 14.03.01.04(5)(a). The use of the word "testimony," according to the Detention Center, indicates that a subpoenaed witness must be interviewed formally, i.e. under oath or affirmation, and the interview must be recorded and transcribed.

We disagree with the Detention Center's suppositions. Most significantly, the statutory authority provided the Commission by Article 49B, Section 10 is not restricted by the subsequently enacted regulations concerning the Commission's subpoena authority; rather, the regulations provide a more thorough description of the investigative tools that may be utilized by the Commission and the proper procedures for employing these tools. That COMAR contemplates the Commission's ability to utilize a subpoena during its investigation does not mean that the investigatory and fact-finding powers of the Commission are limited to eliciting information from subpoenaed witnesses or documents; the provisions in CO-

directly or may order the lower court to do so." Md. Rule 8–604(e)(2002).

MAR regarding the Commission's investigatory process are not exclusive.

■ The Commission has the ability, as one of its many investigatory tools, to use a subpoena to compel the attendance or testimony of witnesses or the production of documents. Again, that this is a permissible tool, does not mean that it is the only tool. In fact, subpoena use is qualified by the premise that "if completion of an investigation requires the issuance of a subpoena ..." Thus, it is implied that the Commission's attempts at acquiring the information without a subpoena have failed, which is, in turn, indicative of the Commission's inherent ability to gather such information absent a subpoena.[6]

■ The Detention Center further argues that Section 10 was enacted to protect employers from unwarranted or frivo-

---

**6.** The Detention Center also argued that the Commission's action for injunctive relief was, itself, invalid because if the Detention Center were, in fact, frustrating the investigation, then Article 49B, Section 11 provides the Commission a method to enforce its investigative authority, i.e. the Commission could issue a subpoena. *See Banach v. State Comm'n on Human Relations,* 277 Md. 502, 512–13, 356 A.2d 242, 249 (1976) (holding that the Commission has the authority to issue subpoenas in its preliminary investigation). The Detention Center's assertion is without merit. While a subpoena could certainly compel resistant witnesses to come forward or compel the Detention Center, itself, to produce documents, a subpoena would not have the legal authority to prevent the representatives of the Detention Center from appearing at the confidential interviews. Only an injunction, such as the one the Commission attempted to obtain, could have prevented the frustration of the investigation. Again, this is not an issue of subpoena enforcement. The subpoenaed witnesses arrived and were willing to testify; the Commission objected to interviewing these witnesses because of presence of third party, an agent of the Detention Center, in violation of confidentiality requirements and the undue influence these agents potentially could have on the investigation process. Thus, the subpoena, itself, was honored, but the interview was disrupted by an (unsubpoenaed) third party.

The Detention Center alternatively challenges the validity of the issuance of a subpoena in the first place by arguing that the issuance of a subpoena was improper because there was no showing · that the subpoenas were necessary to complete the investigation. Because the County Attorney was not representing the witnesses, the Detention Center has no standing to challenge the issuance of these subpoenas.

lous complaints by requiring a preliminary investigation before the employer can be subject to a Commission complaint. The Detention Center claims that because the investigatory process is for its benefit, the Detention Center was entitled to be present during the interviews and to ensure that testimony was taken properly, i.e. recorded and transcribed. Again, we find no merit in this assertion. While the investigative process may, in part, protect an employer from frivolous claims, it was never intended to provide an impenetrable shield through which no investigation could be completed in confidence and without undue influence or intimidation by the employer accused of violating the statute. The Legislature did not mandate that the preliminary investigation must be conducted through formal transcribed interviews where both the witness and the accused are privy to the questioning process; to the contrary, Section 13 of Article 49B indicates that the Legislature intended to keep the investigations confidential, to the extent feasible. As such, we refuse to find that the Detention Center's presence was required at the witness interviews during the preliminary investigation; nor do we conclude that the statute and regulations require recording and/or transcription of the interviews.

## C. The Propriety of Injunctive Relief

We turn now to the pivotal issue in this case, i.e. whether the Commission's request for injunctive relief pursuant to Article 49B, Section 4, should have been granted by the Circuit Court. While the title of Section 4, i.e. "[p]ower to bring civil actions for *temporary* injunction," would seemingly allude that such an injunction is interlocutory or preliminary in nature, in reality, this statutory injunction shares more of the characteristics of a permanent injunction. As we reiterated in *Bey v. Moorish Sci. Temple of Am.*, 362 Md. 339, 765 A.2d 132 (2001):

A permanent injunction is, as its names indicates, "an injunction final or permanent in its nature granted after a determination of the merits of the action." But a permanent injunction is not "permanent" in the sense that it must

invariably last indefinitely. Rather, it "is one granted by the judgment which finally disposes of the injunction suit." The difference between an interlocutory injunction and a permanent injunction turns on "whether there has been a determination on the merits of the claim. If that determination has been made, then the injunction may be final; if not, it is interlocutory."

*Id.* at 354, 765 A.2d at 140 (quoting *Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 395, 761 A.2d 899, 911 (2000)(internal citations omitted)). The statutory injunction authorized by Section 4 is one which may finally dispose of the injunction suit, although its length may only be for the duration of the investigation, as in the case *sub judice.* Therefore, the factors traditionally required to obtain an interlocutory or preliminary injunction in equity, i.e. (1) the likelihood that the plaintiff will succeed on the merits; (2) the "balance of convenience" determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal; (3) whether the plaintiff will suffer irreparable injury unless the injunction is granted; and (4) the public interest, *see J.L. Matthews, Inc.,* 368 Md. at 83 n. 8, 792 A.2d at 294–95 n. 8 (quoting *Fogle v. H & G Rest., Inc.,* 337 Md. 441, 455–56, 654 A.2d 449, 456 (1995)); *Department of Transportation v. Armacost,* 299 Md. 392, 404–05, 474 A.2d 191, 197 (1984), are largely inapplicable when reviewing the propriety of a statutorily authorized injunction. *See Massachusetts Water Res. Auth.,* 256 F.3d at 47 (explaining that court's usual role of chancery is not appropriate where Congress has provided guidelines for assessing the propriety of a statutory injunction); *Gov't of the Virgin Islands, Dept. of Conservation v. Virgin Islands Paving, Inc.,* 714 F.2d 283, 286 (3rd Cir.1983)(holding that, contrary to injunctions in equity, no showing of irreparable harm was required under the Air Pollution Control and Coastal Zone Management Acts); *Atchison, T. & S.F. Ry. Co. v. Lennen,* 640 F.2d 255, 259–60 (10th Cir.1981)(discussing the several federal statutes under which a showing of irreparable harm, a requirement under a court's equitable jurisdiction, is not required for injunctive relief);

*Beamish,* 466 F.2d at 806 (stating that the standard for determining the propriety of injunctive relief was restricted by the provision which required only a probable cause showing of a statutory violation); *see also Fogle,* 337 Md. at 456, 654 A.2d at 457 (stating that when considering circumstances where injunctive relief implicitly affects a governmental interest, "the court is not bound by the strict requirements of traditional equity as developed in private litigation" and the courts "may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go only when private interest are involved")(internal quotations and citations omitted). As the United States Court of Appeals for the Ninth Circuit aptly stated:

> The function of a court in deciding whether to issue an injunction authorized by a statute ... to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants. This is not to say that the [statutory] violation ... automatically requires a district court to issue an injunction. The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case. However, the fact that a federal statute is being enforced by the agency charged with that duty may alter the burden of proof of a particular element necessary to obtain injunctive relief. Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the courts to enforce them when asked.

*United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174–75 (9th Cir.1987)(internal citations omitted). Similarly, the United States Court of Appeals for the First Circuit, in *United States v. Massachusetts Water Res. Auth., supra,* discussed the different roles a court must play in terms of considering an injunction under statute or in equity and explained:

> The role a court plays in deciding whether to grant a statutory injunction is different than the one it plays when it weighs the equitable claims of two private parties in a suit seeking injunctive relief. This is so because a court asked

to order a statutory injunction must reconcile two sets of competing concerns. Courts asked to issue an injunction must ordinarily assume the role of a court of chancery—a role that requires them to determine whether the equities of the case favor, and whether the public interest would be served by, the granting of injunctive relief. But *in the context of statutory injunctions, the court's freedom to make an independent assessment of the equities and the public interest is circumscribed to the extent that Congress has already made such assessments.*

256 F.3d at 47 (internal citations omitted)(emphasis added).[7]

Because the traditional factors in equity are largely inapplicable to a court's determination regarding a statutory injunction, and to our review on appeal, we are instead guided by the explicit language of the Legislature which provides that "if the Commission believes that appropriate civil action is necessary to ... prevent irreparable harm ... the Commission may bring action to obtain a temporary injunction." Md.Code, Art.

---

7. The decision of the First Circuit Court of Appeals in *Massachusetts Water Rest. Auth.* largely involved the court's examination of the language of the statutory provision in question, the Solid Waste Disposal Act, 42 U.S.C. § 300g–3(b), which provides, in relevant part: "[t]he [EPA] Administrator may bring a civil action ... to require compliance with [the Solid Waste Disposal Act],.... The court *may* enter ... such judgment as protection of public health may require...." *See* 42 U.S.C. § 300g–3(b). The First Circuit concluded that the Legislature's use of the word *may* in "the critical passage of the SWDA's judicial enforcement subsection" indicated that it intended that courts retain some degree of discretion. *See Massachusetts Water Rest. Auth.*, 256 F.3d at 51–53 (discussing the implications from the use of the word "may" and concluding that equitable discretion is preserved in the courts as a result).

Contrary to the SWDA provision, Section 4 of Article 49B does not utilize the term "may" when discussing the court's discretion; in fact, Section 4 does not refer to the court's authority whatsoever, except to note the proper venue in which the action for injunctive relief should be brought. While we do not believe that this omission should equate to a mandatory injunction upon the Commission's request, *see id.* at 48 (stating that "if Congress wishes to circumscribe these equitable powers, it must do so with clarity"), we do believe it indicates that, so long as the Commission establishes a reasonable necessity "to preserve the status of the parties or to prevent irreparable harm," the injunctive relief should be granted. Md.Code, Art. 49B, § 4.

49B, § 4. The purpose of Section 4 was to "provid[e] . . . the Human Relations Commission [the ability to] seek certain types of court relief in certain cases. . . ." *See* 1975 Md. Laws, ch. 419, § 1. In providing for the occasions in which the Commission may seek injunctive relief, the Legislature implicitly established a standard for courts reviewing these requests for injunctive relief; namely, that so long as the Commission satisfies the court that a reasonable necessity exists to preserve the status of the parties or prevent irreparable harm, the requested injunction should be granted. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 479 (2nd Cir.1995)(stating that "a railroad seeking statutorily authorized injunctive relief . . . is not governed by . . . equitable criteria . . . a railroad *need only demonstrate that there is reasonable cause to believe* that a violation of the [Railroad Revitalization Act and Regulatory Reform Act of 1976] has occurred or is about to occur")(internal quotations and citations omitted)(emphasis added); *United States v. Kaun,* 827 F.2d 1144, 1148 (7th Cir.1987) (explaining that for statutory injunctions, "the moving party *need only show that there is a reasonable likelihood* of future violations in order to obtain relief")(quoting *S.E.C. v. Holschuh,* 694 F.2d 130, 144 (7th Cir.1982)(emphasis added)).

In considering whether injunctive relief is reasonably necessary, it is important to first understand the utility of an injunction, in general, and that which was contemplated by the Legislature in its use of "irreparable harm." "An injunction is a writ framed according to the circumstances of the case commanding an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience." *Bey,* 362 Md. at 353, 765 A.2d at 139 (internal quotations and citations omitted). In providing the Commission the ability to seek, and the circuit courts the ability to grant, injunctive relief, the Legislature clearly hoped to remedy circumstances that otherwise could result in inequitable or unjust results.

 While case law concerning the issuance of injunctive relief in this State predominately involves a non-statutory injunction, the purpose for issuance of an injunction under statutory authority is similar. As we stated in *Bey:*

> The very function of an injunction is to furnish *preventative relief against irreparable mischief or injury, and the remedy will not be awarded where it appears to the satisfaction of the court that the injury complained of is not of such character.* Suitors may not resort to a court of equity to restrain acts, actual or threatened, merely because they are illegal or transcend constitutional powers, unless it is apparent that irremediable injury will result. The mere assertion that apprehended acts will inflict irreparable injury is not enough. The complaining party must allege and prove facts from which the court can reasonably infer that such would be the result.

*Id.* at 354, 765 A.2d at 139 (quoting *Coster v. Dep't of Personnel,* 36 Md.App. 523, 373 A.2d 1287, 1289–90 (1977))(emphasis added). The general function of an injunction in equity, as articulated above, i.e. to furnish preventative relief against irreparable mischief or injury, is markedly similar to the language utilized by the Legislature in Section 4, i.e. to prevent irreparable harm.

 Irreparable harm is a pliant term adaptable to the unique circumstances which an individual case might present. We explained that,

> an injury is irreparable, within the law of injunctions, where it is of such a character that a fair and reasonable redress may not be had in a court of law, *so that to refuse the injunction would be a denial of justice*—in other words, where, from the nature of the act, or from the circumstances surrounding the person injured, or from the financial condition of the person committing it, it cannot be readily, adequately, and completely compensated for with money.

*Bey,* 362 Md. at 356, 765 A.2d at 140 (quoting *Coster v. Dep't of Personnel,* 36 Md.App. 523, 526, 373 A.2d 1287, 1290 (1977))(emphasis added). So long as the seeker of injunctive

relief, (in this case, the Commission, pursuant to Section 4), establishes that there exists some reasonable basis for its belief that an injunction is necessary to prevent irreparable harm, i.e. that the actions of the Detention Center would, if not prevented, cause a denial of justice, *see id.,* the statutory injunction should be granted. *See Kaun,* 827 F.2d at 1148.

We pause to reiterate that which the Commission specifically sought, as is ascertained from its petition for injunctive relief and the arguments at the subsequent hearing regarding the petition. It is clear that the Commission sought to prohibit agents from the Detention Center from appearing at confidential witness interviews and insisting that the interviews be recorded and transcribed. The Commission also noted its desire to "prohibit the Detention Center from contacting Commission staff, except as required" and "require the Detention Center to post notices in the workplace setting forth the State's anti-discrimination laws." Evidence was not presented in the record, however, which would allow this Court to determine whether injunctive relief may be appropriate in these circumstances. *See State Comm'n on Human Relations v. Suburban Hosp., Inc.,* 348 Md. 413, 417, 704 A.2d 445, 447 (explaining that an appellate court may examine the propriety of a court's grant or denial of injunctive relief only when the parties have had the opportunity to present evidence on the issues of injunctive relief). Therefore, our analysis will be directed towards the request to enjoin the Detention Center from appearing at confidential witness interviews and insisting that the interviews be recorded and transcribed. Should the Commission desire the injunction to extend to these alternative requests, it must, on remand, present additional evidence before the Circuit Court to establish the reasonableness of its belief that an injunction concerning these requests is necessary to prevent irreparable harm.

The Commission's request, i.e. to prevent the Detention Center from hindering its investigation into complaints of discrimination by insisting on being present and recording and transcribing confidential interviews, is temperate and reasonable. The public has an interest in ensuring unfettered inves-

tigations of illegal company practices, particularly when civil rights are at issue. Accordingly, the Legislature has given the Commission broad authority to conduct such investigations; the Commission has statutory authority to begin a preliminary fact-finding process once a verified complaint is received. The rights of the accused, in this case the Detention Center, are not encumbered by this preliminary investigation; it will have full opportunity to view and contest the evidence gathered, and present its own, *if* after the preliminary investigation, the Commission decides to file a formal legal complaint.

The Commission's belief that it will suffer irreparable injury is not unreasonable or without basis. Absent an injunction, the Detention Center's practice of interfering with the investigation by, as the evidence in the record suggests, insisting on being present at witness interviews and by demanding that those interviews be recorded and transcribed may continue, and will likely have the effect of intimidating or influencing witnesses and frustrating the truth-seeking and confidential nature of the investigative process. Furthermore, greater injury would result from the refusal of the injunction than in the granting of it, as ordering the Detention Center to refrain from disrupting the interviews and other aspects of the investigation does not inconvenience the Detention Center, particularly when it has no statutory right to be involved at this preliminary stage of the investigative process. *See e.g. Rowe v. C & P Tel. Co.*, 56 Md.App. 23, 30, 466 A.2d 538, 542 (1983)(stating that under the balance of convenience test, the benefits to the complainant must equal or outweigh any harm which the other party might incur should an injunction be granted).

The Commission presented adequate evidence to support its belief that irreparable harm in the absence of injunctive relief would occur. The Legislature's interest in preventing and proscribing employment discrimination is beyond dispute. Pursuant to that interest, the Legislature explicitly provided the Commission the ability to seek an injunction when prompt

judicial action is necessary to carry out its purpose and that of the anti-discrimination legislation of Article 49B. Logically speaking, without an unimpeded fact-finding process, the Commission would be precluded from gathering the type of evidence that would normally be necessary to file a bill of complaint, and hence, the enforcement authority of the Commission would be inherently limited.

The Detention Center argues that the requirements for this statutory injunctive relief—to preserve the status of the parties or to prevent irreparable harm—do not exist in this case, and therefore, the court lacks the authority to issue an injunction as a matter of law. The Detention Center bases its argument largely on the fact that the complainants' employment continued without interruption after the complaint had been filed with the commission; neither of the complainants was terminated, suspended, demoted, or reduced in pay. As such, according to the Detention Center, the status of the parties had not changed and an injunction would be unwarranted.

In so arguing, the Detention Center cites *State Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 125, 360 A.2d 1, 5 (1976), as authority for its proposition that the employment of a complainant must somehow be adversely impacted before an injunction could be issued. Notwithstanding that *Amecom* is distinguishable because it involved an alleged disruption of the "status of the parties," the Detention Center misapplies the *Amecom* holding in an attempt to narrow the scope of injunctive relief available pursuant to Section 4. In examining Section 4, it is true that "in creating an interlocutory remedy available without a determination on the merits establishing a preexisting right, the Legislature has created, in effect, a new substantive right" with respect to an employee's right to be free from discrimination in employment. *Amecom,* 278 Md. at 126, 360 A.2d at 5. The protection of this substantive right, however, is not to the exclusion of other possible purposes for which Section 4 may be implemented.

The Commission's pursuit of an unfettered, uninterrupted, and comprehensive preliminary investigation, if hindered or disrupted by the Detention Center's actions, would constitute a denial of justice, particularly because the comprehensive and ubiquitous nature of our State's anti-discrimination legislation suggests both the Legislature's goals and the indispensable nature of tools of enforcement it afforded the Commission, such as the injunctive relief provided in Section 4. *See Molesworth*, 341 Md. at 632, 672 A.2d at 613–14 ("Section 14 [of Article 49B] is one of at least thirty-four statutes, one executive order, and one constitutional amendment in Maryland that prohibits discrimination based on sex in certain circumstances. Together these provisions provide strong evidence of a legislative intent to end discrimination based on sex in Maryland.").

The aforementioned analysis leads this Court to conclude that injunctive relief, pursuant to Article 49B, Section 4, should have been granted to the Commission to enjoin the Detention Center's practice of interference with its preliminary investigation into employment discrimination complaints by insisting on being present and transcribing the confidential witness interviews. Injunctive relief may be granted when the investigation is so hindered by a party as to cause irreparable harm to the investigative process as a whole, and with respect to this case, the Circuit Court erred in denying injunctive relief to the Commission for the Detention Center's disruption of the preliminary investigation. Accordingly, we hereby reverse the Circuit Court's order and remand the case to that court with instructions to issue an injunction to enjoin the Detention Center from interfering with the Commission's statutorily sanctioned preliminary investigation by insisting on being present at confidential witness interviews and demanding that those interviews be transcribed for the duration of its preliminary investigation and for any other proceedings in accordance with this opinion.

***THE CIRCUIT COURT OF TALBOT COUNTY'S DENIAL OF INJUNCTIVE RELIEF IS REVERSED AND THE CASE IS REMANDED FOR THE ISSUANCE OF AN IN-***

*JUNCTION IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.*